Menkins *v.* Lightner.

FREDERICK MENKINS, Appellant, *v.* HERVEY LIGHTNER, Conservator of JOHN SHEBER, Appellee.

### APPEAL FROM PEORIA.

Every man will be presumed to be sane until the contrary is proved, and the burthen of proof lies upon the party who alleges insanity.

When insanity is established to have existed, it will be presumed that it continues, until the presumption is overthrown by proof, which must be made by the party who alleges a restoration to reason.

Contracts entered into after insanity has been established by proof, if insisted on, by the party who claims the benefit of it, must be shown to have been executed when both parties were sane.

A party will be protected *against his own acts,* while in a state of insanity, even if brought on by drunkenness.

Relief may be granted (where the rights of parties may be restored), against acts done by a party who is so inebriated as to be incapable of contracting, or who, from the effects of inebriation, continues incapable.

IN May, 1845, Sheber leased from William S. Moss, a lot in Peoria, for ten years, with the privilege of purchasing the same within that period at the sum of five hundred and fifty dollars. Sheber, in the mean time, to pay rent at the rate of $66.00 per year and all taxes.

Sheber took possession and erected buildings which would rent for from $150.00 to $200.00 per year.

On the 28th of February, 1850, Sheber assigned this lease and contract to Menkins, the consideration of which was $400, to be paid April 1, 1851. At the same time there was an agreement made between Sheber and Menkins, that if Menkins purchased the lot under the lease and agreement with Moss, Sheber might re-purchase the same from him within the period of time prescribed in the lease and contract with Moss, by paying the value of improvements and repairs made by Menkins. That if Sheber re-purchased of Menkins, he, Menkins, was to keep possession five years after the purchase, paying an annual rent of $200; and $4.50 per month from May, 1850, to the time of the re-purchase.

Menkins took possession, at the date of the contract, and received the rents and profits until March 4, 1853, the time of the filing of this bill, and has continued to receive them since that time.

On the 24th of February, 1853, the agreement between Sheber and Menkins was recorded.

On the 31st of January, 1853, Menkins procured and recorded a deed from Sheber, of his interest in the premises.

At the time of this conveyance the property was worth from $1,500 to $2,000.

In 1848 and 1849, when the property was less valuable,

Sheber was offered by two persons, Murphy and Guyer, $1,200 for his interest.

The report of the master in chancery shows that the account between the parties of money received by him, Menkins, in rents and expended by him, leaves a balance in his favor of $168.85, which the decree directs shall be paid to him by the clerk of the court with whom the same had been deposited.

The complainants insist that at the time Sheber assigned his lease and made his contract with Menkins, in February, 1850, and also when he made the deed to Menkins, which was recorded on the 31st of January, 1853, he was insane and incapable of transacting business.

He was declared insane by judicial proceedings on February 26, 1853.

The evidence shows that both before and after the 31st day of January, 1853, the time of the conveyance to Menkins, for weeks and months, and ever since that time, Sheber has been habitually drunk, and insane, and incapable of transacting business.

One Graham, who became a purchaser from Menkins during the pendency of the suit, was made a party to the bill.

There was a decree rendered May 17, 1853, setting aside the contract of February 28, 1850, and deed of January 29, 1853, and the assignment of the same date, and the cause was referred to the master to take an account of moneys paid by Menkins to Sheber, and for taxes, etc. ; also of rents received by Menkins, with interest; May 18, 1855, the master brought in his report, finding $168.85 due to said Menkins. To which report the defendant excepted for the following reasons :

1. Said report does not allow said Menkins anything for money paid on his purchase of January 31, 1853.

2. The proof is that said Menkins paid the amount of $400 on said contract of January 31, 1853, partly in money and the remainder in his due bill, and yet said master has allowed nothing for payments on said contract.

3. No payments made upon said contract are allowed by said master, except the sum of $39 to Ackerland & Co.

There was a final decree that the clerk pay Graham $168.85, and that Graham execute to complainant a deed of the premises; also decree of costs of court against Menkins and Graham, and that complainant execute a mortgage to indemnify Menkins against any note or due bill given by him to said Sheber, from which final decree the said defendant, Menkins, took an appeal to the supreme court.

Manning and Merriman, for Appellant.

N. H. Purple and W. F. Bryan, for Appellee.

SCATES, C. J. The chief question is one of fact, whether Sheber was of a sound and agreeing mind and memory on the several days in 1850 and 1853, when these contracts were made. A statement of a few principles of law, on the subject of insanity and lunacy, will facilitate the application of the facts.

The law presumes every man to be sane, until insanity is proven, the burthen of which lies upon the party alleging it. 2 Greenlf. Ev. Sec. 373; *Jackson* v. *Van Dusen*, 5 John. R. 154; *Grabill* v. *Barr*, 5 Penn. State R. 441.

When insanity or lunacy is once established to have existed, the presumption of its continuance arises, until rebutted by proof, the burthen of which lies upon the party alleging a restoration, or a lucid interval. 2 Greenlf. Ev. Sec. 371; *Jackson* v. *Van Dusen*, 5 John. R. 154; 5 Penn. State R. 441.

In contracts made after insanity or lunacy is established by proof, the burthen lies upon the party insisting on the contract, to show that the party was sane at the time of making the contract. *Jackson* v. *Van Dusen*, 5 John. R. 154; 5 Penn. State R. 441; *Harden* v. *Hays*, 9 ibid. 151.

Courts will protect the party against his own acts done under a state of insanity, at his instance, or that of his conservator or representatives, although he has brought on that condition by drunkenness. *Wigglesworth* v. *Steers et al.*, 1 Hen. and Munf. 70; 1 Parson's Cont. 310, 311 and notes; 24 Vermt. R. 224.

Relief, in like manner, will be extended from acts done by a party when too drunk to exercise an agreeing mind—or a sound and disposing judgment—and in like manner when the act is done before the restoration to such a state from the effects of drunkenness. 1 Story Eq. Jurisp. Secs. 231, 232; *Hall* v. *Warren*, 9 Ves. Jr. R. 608; 1 Ves. and Beam. 199. But this may not be in all cases, where the other party may not be restored to the rights parted with. *Niell* v. *Morley*, 9 Ves. Jr. R. 478.

Looking at the whole evidence before us, in this case, we cannot resist the conviction of a total want of capacity in Sheber to make important contracts for the bulk or chief part of his whole estate, as is shown, either in 1850 or 1853. His *habit* was that of habitual drunkenness for a course of years, before the first sale. There is no contradiction of the alleged fact, that when drunk and when drinking he was a fool, and crazy. One so far gone as to bring on the stages of *delirium tremens*, or *mania potu*, may hardly be called sane, simply upon becoming sober.

After the defendant had established so long a continuous

career of drunkenness, and craziness from it, as has been proven here, it is not enough, or satisfactory, to show a mere sober interval of a few hours, or even a few days. I am not prepared to believe that the mind can so soon resume a healthy vigor, after so much and so long derangement from such besotted habits. This is a much stronger case than *Say* v. *Barrick*, 1 Ves. and Beam. R. 199, where the court set aside a case, executed early in the morning, being the soberest hours of the party, within the day and night. When the mind is thus broken down by a long course of dissipation, the feverish moments of a half sober or even sober interval, cannot be called, therefore, a lucid interval, for the purpose of establishing the acts of the party. To lay down such a rule would be but to invite the covetous and the crafty to seize the victim in an interval of his greatest physical agony and prostration, as the one in which the mind alone is clear, free and judicious. All observation contradicts the inference of so instantaneous a mental recovery.

Before the contract in 1850, Sheber had "fits," as is expressed by some of the witnesses, of *mania potu* and *delirium tremens*, and was in the habit of daily drunkenness—and this habit is shown to have been kept up for nearly four years, until the contract in January, 1853.

After reaching a stage of *delirium tremens* in 1850—and being crazy, silly, foolish, when drunk then—and continuing constantly in this habit for four years longer—it can hardly be expected that a court will be contented to find sanity and competency in such an inebriate as soon as sober. The witness who drew the last contract, without making particular observations, testifies only to an interval of sobriety, not of sanity or capacity. If his judgment of sanity is dependent upon the supposed advantages gained in the first contract, we should be constrained to differ with the witness. The prices paid on each contract, compare very unfavorably with the real value, and the prices offered by others. No aid is derived to the defense from this source. On the contrary, we cannot well resist the conviction that Sheber was overreached and sacrificed by plaintiff. But we feel that this case cannot be made plainer, upon the facts, by an elaboration of argument upon them. We proceed, therefore, to the decree. While we fully sustain the decree setting aside the contracts and conveyance to Menkins, etc., we do not think that the account has been fully and correctly taken. The cause will be remanded with direction to make reference to the master to state part of the account anew, if desired, by the plaintiff, showing the amount of purchase money paid Sheber, if any, on purchase of 1853, also amount paid Moss, with interest on each from

times of payment; also the value of improvements, if any, at the end of case, made by Menkins with interest from that time. From these sums, added to the others reported on, should be deducted the rents due and unpaid on both leases, with interest thereon from the times respectively due. The balance will be the amount due Menkins or Graham on settlement.

*Decree modified and remanded for further account as above.*