# NATHAN CLEARWATER *et al.*

## *v.*

## JAMES KIMLER *et al.*

1. DEED — *mental weakness of grantor.* Where a bill is filed by a part of the heirs of a deceased person, to set aside a deed of conveyance to another heir, on the ground, that the grantor was mentally too weak and imbecile to be capable of executing such an instrument, and it appears from the evidence, that he manifested prudence and judgment in determining the best mode of having the conveyance take effect after his death, it will not be presumed, that he was mentally too weak to execute such a conveyance.

2. SAME—*consideration.* Where a father-in-law makes a deed to his son-in-law, to be held as an escrow until after the death of the grantor, before delivery, with the agreement, that the grantee pay a price fixed by them, and that the grantee and wife shall reside near him, and he shall render assistance and contribute to the comfort of the grantor and his wife so long as they live courts will not be rigid in scrutinizing the relative value of the property and the money paid as the consideration. The owner of property has the legal right to dispose of it as he may choose, and may distribute it among his children during his life, instead of by will, and if in doing so, he makes a part of his heirs the recipients of his bounty beyond others, the remaining heirs have no legal right to complain.

3. SAME—*mistake—corrected in equity.* Where, in preparing a deed for execution, the scrivener misdescribes the property, when made satisfactorily to appear, a court of equity will correct the mistake and reform the deed.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was a suit in equity, brought by Nathan Clearwater and a large number of other persons, the heirs of Reuben Clearwater, in the McLean Circuit Court, against James Kimler, Jane Kimler and John Buener. The bill was filed for the purpose of setting aside a conveyance from Reuben Clearwater, deceased, to James Kimler, upon the alleged ground, that the grantor was weak and imbecile in mind, easily influenced, and that he had made the deed by yielding to improper importunities, and that the consideration paid was grossly inadequate to sustain the deed. It appears, that Kimler was his son-in-law, and that Jane Kimler, the wife of the former, was his daughter; that grantor was anxious to have his son-in-law and daughter near him, and it seems to have been agreed, that Kimler should purchase the land in controversy, and pay therefor $945; but, by a subsequent arrangement, the consideration was fixed at $1,425, for the sixty-five acres in dispute.

It also appears, that Kimler and wife were to render aid, assistance and care to Clearwater and wife during their lives. That Kimler and wife performed this part of the agreement.

That the grantor directed a justice of the peace to prepare a deed of conveyance for the land to Kimler, which was to be held as an escrow, and only to be delivered on the death of the

grantor. But the justice of the peace, in preparing the deed, misdescribed the lands, and the mistake was not discovered until after the deed was executed. Kimler filed a cross bill, to have the mistake corrected.

On the hearing there was much conflicting evidence as to the mental condition of the grantor, as well as the value of the land. But the evidence of the mistake in the description of the premises in the deed was clear.

The cause was heard on the bill, answers, replications, the cross bill, answers, replications, exhibits and proofs, and the court below dismissed the original bill, and granted the prayer of the cross bill, and decreed the correction of the mistake in the deed. Complainants, to reverse that decree, bring the case to this court on appeal, and assign the rendition of the decree for error.

Messrs. WILLIAMS & BURR, for the appellants.

Messrs. TIPTON & BENJAMIN and Mr. W. H. HANNA, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This record presents questions of fact only, for determination. Appellants insist, that it appears from the evidence, that Rueben Clearwater was, when he executed the deed to the land in controversy, so imbecile and weak in mind, as to render the conveyance inoperative and void. That the consideration paid for the land was so grossly inadequate as to require the interposition of a court of chancery to cancel it, and that the facts fail to prove that the conveyance was ever consummated, and that even if a mistake in the description of the property is proved to have been made, the court should refuse to correct it, and reform the deed.

It appears, that the conveyance was executed by the grantor to his son-in-law. That in 1849, Clearwater conveyed to him one hundred and two and a half acres of land adjoining the

tract in controversy, at eight dollars per acre. Afterward he conveyed to Kimler one acre, on which the latter erected his dwelling-house, for eight dollars. It also appears, that Clearwater, on the 7th of January, 1865, directed a justice of the peace to prepare a deed of conveyance for the balance of his homestead to Kimler, embracing sixty-five acres, at twenty-five dollars per acre. It seems, that this deed was intended to include the one acre previously conveyed. The justice of the peace prepared a deed, which was duly executed, and delivered to the justice of the peace, to hold as an escrow, pursuant to this provision in the deed: "It is positively the agreement between the parties to this deed, that the said Reuben Clearwater is to retain possession of the land above described, and have the use thereof until the day of his death; and that this deed is not to be delivered to the said Kimler until after the death of the said Clearwater." It appears, that the justice of the peace made a mistake in the description of the land.

There was a large amount of evidence heard touching the mental condition of the grantor, but when it is all considered, we are clearly of the opinion, that it wholly fails to establish the fact of mental weakness, such as should invalidate this conveyance. He seems to have been fully aware of the nature and consequences of the transaction. He proposed to the justice of the peace, that it should be evidenced by a bond, but on the suggestion of the latter, adopted this mode of making a deed, and only delivering it as an escrow, to take effect after his death. He thus manifested a degree of prudence that rebuts mental weakness. Again, when complaint was made, that he had sold this property too low, he asserted the right to dispose of his property as he might choose. This would seem to repel the presumption, that he was yielding and easily influenced by others. We perceive no marks of mental weakness, although the evidence may show, that his memory of recent events was not so good as it had formerly been. On the whole of the evidence we are fully satisfied, that he was entirely capable of disposing of his property, and that the transaction should not be disturbed for that reason.

As to the inadequacy of price, there is, as always will be, a conflict of testimony. When a value has to be determined by the opinions of witnesses, we always find, that there is great controversy as to the true worth of property. But when all of the evidence contained in this record is considered, it fails to prove that the price is grossly inadequate. The property was no doubt worth more than the consideration named in the deed. But subsequently it was agreed, that it should be raised from $945 to $1,425. This latter sum was doubtless less than the property could have been sold for in the market. But it must be remembered, that Kimler and his wife contributed to the comfort of her father and mother, by rendering them assistance and attention for many years, for which no charge was ever made, or most likely ever intended to be. He, no doubt, desired to have his daughter and son-in-law near to him and his wife, in their declining years. And in the informal arbitration, the arbitrators, neighbors, knowing all of the circumstances, determined that Kimbler was entitled to $500 for his assistance to his father-in-law. It is true, that they also thought he should pay thirty-five dollars per acre. If that be adopted as a basis for a settlement, he only obtained the land for $350 less than it was worth.

Again, the evidence shows, that there was some kind of a verbal understanding when the first conveyance was made to Kimler, that he was to have the balance of the tract at eight dollars per acre; and that Kimler and his wife were to take care of Clearwater and his wife during their lives. From the evidence in the case, we have no doubt, that Clearwater intended the aid that Kimler rendered him in his business, and the care and assistance he and his wife extended to him, should form a part of the consideration; and we are satisfied, that it, together with the price agreed upon, was amply sufficient to sustain the conveyance. Again, where, as was perhaps true in this case, a father or father-in-law disposes of property by way of advancement or distribution to his children, during his life, instead of by will, courts will not be as rigid in considering the adequacy of the consideration paid as if the transaction was

with strangers. As the grantor said, he had the legal right to dispose of his property as he chose, and if he saw proper to make this son-in-law and daughter the recipients of his bounty, the other children have no grounds of complaint. He seemed to prefer their care and assistance to that of others, and to have been liberal in rewarding them for it.

When the evidence is considered, we can have no doubt, that the justice of the peace who drew the deed, by mistake, inserted the wrong numbers. He speaks of it with confidence, and seems to be clear and distinct in his recollection of the transaction. We think his evidence leaves the case free from doubt, that a mistake was made in the description, and that the land intended to be conveyed was omitted in the deed. We are, for these reasons, of the opinion, that the court below did not err in dismissing appellants' bill, and in decreeing the relief prayed in appellee's cross bill. The decree of the court below is therefore affirmed.

*Decree affirmed.*