JOSEPH WILLEMIN

*v.*

ANTHONY DUNN *et al.*

1. BURDEN OF PROOF—*to set aside deed for fraud, etc.* The burden of proof is upon the complainant to show the truth of charges of fraud, surprise, undue influence, etc., as grounds for setting aside his deed for property, as the deed is *prima facie* valid.

2. GIFT—*setting aside voluntary deed.* In the case of a stranger or person not standing in any confidential or fiduciary relation towards the donor, equity will not set aside a voluntary deed or donation, however improvident it may be, if it be free from the imputation of fraud, surprise or undue influence, and is spontaneously executed with the grantor's eyes open.

3. Where the owner of real property, at an advanced age, after the death of his wife, having no children or near relations known, and during an illness, by his will devised his property to a tenant, who merely occupied the position of a neighbor and friend, and afterwards, in the presence of his agent and legal adviser, conveyed the property by deed to the tenant, taking back a note for $1300 secured by deed of trust on the property, and there was no proof any fraud, surprise or undue influence had been practiced upon him to induce the conveyance, or any evidence of any mistake or want of sufficient mental capacity, although the amount of the note taken was greatly less than the value of the property, it was *held,* that a court of equity would not set aside the conveyance at the suit of the grantor.

4. SAME—*donatio causa mortis.* Where the owner of real estate makes a deed absolute on its face of property to another, and its delivery is unconditional and without qualification, and takes back a deed of trust from the grantee to secure a sum in gross for the grantor's support, this will clearly negative any subsequent claim that the deed was not to take effect until after the grantor's death.

5. SAME—*when sale and not a gift.* If the grantor of real estate takes from the grantee a note for a sum of money supposed to be equivalent to the rental value of the same during the grantor's life, though a very inadequate consideration, it will amount in law to a sale, although containing a large element of mere gift.

6. MENTAL CAPACITY—*evidence on question in suit to avoid deed.* The advanced age of a grantor, and his great grief and sickness induced by the death of his wife, are proper circumstances to be considered in determining whether he had the requisite mental capacity to execute the deed, or whether he was the victim of an undue influence or any manner of overreaching.

7.  SAME—*mere mental weakness not alone sufficient to avoid deed.*  Mere mental weakness will not authorize a court of equity to set aside a deed or executed contract, if such weakness does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence.

8.  Where a grantor's confidential agent and also his attorney and business manager are present at the execution of a deed by him for his property, aiding him with their counsel, it will not be presumed, in the absence of proof, that the grantor was mentally incompetent to contract, or was not free from improper influences.

9.  TRUST DEED—*right to file bill to redeem.*  Where a grantor in a deed of trust, after the maturity of the note secured, tenders the amount due thereon to the business manager of the payee, in whose hands the note then is, and the tender is refused, a bill to redeem by the debtor may properly be filed.

10.  CHANCERY—*practice as to admission of evidence.*  In chancery cases the practice is not to reverse for erroneous rulings in admitting or excluding evidence, unless it appears from an inspection of the entire record that different rulings might have induced a different decree.

11.  ADMISSION—*statements of an agent.*  The stipulation of an agent of a defendant of the amount due under a deed of trust, on bill to redeem, may be acted upon by the court in stating the account, treating it as a parol admission of an agent acting within the line of his duty.

12.  ERROR—*working no injury.*  A decree will not be reversed for an error in the court below which has worked no injury to the party complaining.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and Hon. GEO. W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

Bill was filed by appellee, Anthony Dunn, in the circuit court of Cook county, on the first day of March, 1878, against appellant, Joseph Willemin, and Edward S. Dreyer and John N. Young, to enjoin the foreclosure of a deed of trust on the property in controversy, and for an account, and that appellee, Dunn, might be let in to redeem from the deed of trust, etc.

On the 13th of March, 1878, appellant, Joseph Willemin, filed his bill in chancery in the same court against the appellee Anthony Dunn, Catherine Dunn, Edmund Knaner, August Hahn and Charles Meyer, charging that a deed executed by said Willemin to said Anthony Dunn, for the prop-

erty in controversy, was obtained by fraud and undue influence practiced by Dunn upon Willemin, and by reason of gross ignorance and want of understanding upon the part of Willemin; and also that the deed was not intended to take effect until after the death of Willemin; and also that the deed is revocable as a gift *causa mortis*, etc.; and praying that such deed be surrendered and canceled, etc.

Subsequently it was agreed by the counsel of the respective parties that the bill filed by Willemin should stand as the original bill, and the bill filed by Dunn, as a cross-bill thereto.

The bills being thus consolidated the cause was heard in the circuit court, and that court, after hearing the evidence, refused the prayer of Willemin's bill, and decreed in accordance with the prayer of Dunn's cross-bill.

Upon this decree Willemin sued out a writ of error from the Appellate Court of the First District, and that court affirmed the decree of the circuit court.

The record comes here by Willemin's appeal from that judgment of affirmance.

Mr. LEWIS UMLAUF, for the appellant.

Mr. GEORGE W. GRAY, and Mr. WM. M. JOHNSTON, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It is for appellant to prove the charges of fraud, surprise, undue influence, etc., for *prima facie* the deed is valid. *Hunter* v. *Atkins*, 3 My. & K. 13.

Since the decision in *Villers* v. *Beaumont*, 1 Vernon, 100, we think it has been regarded as settled, (if indeed it was ever seriously questioned by any respectable court,) that in the case of a stranger, that is to say, a person not standing in any confidential or fiduciary relation towards the donor, equity will not set aside a voluntary deed or donation, however im-

provident it may be, if it be free from the imputation of fraud, surprise, undue influence, and spontaneously executed or made by the donor with his eyes open. This is but in affirmance of one of the most obvious principles of property rights, that the owner, where others have no legal claim on his property, may dispose of it as he pleases.

The material facts in regard to the execution of the deed in controversy may be briefly stated thus: Appellant had reached the age of seventy-five years. He had but shortly before lost his wife. He was childless, and it does not appear that he had any relatives in any near degree—certainly none such are proved to have been in existence. The persons around him were all strangers in blood, and no particular person is shown to have had any claim to his bounty. The appellee Dunn had been his neighbor for many years, and, for some six or seven years, had been tenant to him of a portion of the property in controversy, and their relations, though not unusually intimate, were always friendly. Appellant regarded Dunn as his friend. Appellant was greatly afflicted in mind by the death of his wife, and this contributed to bring upon him a severe spell of sickness, during which he thought he must die, and so he sat about disposing of his property. Before the execution of the deed in controversy he had on each of two different days, within a brief period, made a will, which was subsequently destroyed. In one or both of these provision was made for Dunn, and in the last the same property was devised to him, as we understand the evidence, that is embraced in the deed in controversy. Appellant says that Dunn requested him to make a deed of this property to him, instead of devising it to him. Dunn denies this, and says that he first learned of the contemplated change in the mode of disposition from appellant. Without undertaking to settle this conflict, it suffices to say, on the 28th day of January, 1876, appellant made another will, and, also, at the same time, executed the deed in controversy to Dunn, omitting Dunn's name altogether in that will. At that time, appellant had in his employ, as

business manager, one Dreyer, and the able and faithful coun-
sellor at law who has conducted this suit, in his behalf, through
the several courts—both of whom were present when this will
and deed were signed by appellant,—and there were also pres-
ent, at the same time, an old male servant of appellant, and
several neighbors.   The deed and will were both prepared by
appellant's legal adviser, pursuant to previous instructions
given him by appellant, and it is made to distinctly appear,
by the evidence, that appellant was satisfactorily informed of
the contents of the will and deed when he signed them.

There is no evidence that we have been able to find that
Dunn misrepresented any fact to appellant, or withheld from
him the knowledge of any fact in anywise affecting this deed.
It is not pretended there was any confidential or fiduciary
relation between them which disqualified the one to give and
the other to accept, their relation being simply that we have
before stated—neighbors in habits of friendly intercourse with
each other.

It is not claimed that there was collusion between Dreyer,
or the legal adviser of appellant, and Dunn, whereby Dunn
used them as instruments to impose upon appellant and delude
him into doing that which he would not otherwise have done.
On the contrary, it is conceded these parties did all their situa-
tion required they should do.   We are utterly at a loss to
perceive wherein Dunn is guilty of practicing deception upon
appellant, improperly influencing him, or of taking an unwar-
ranted advantage of his weakness.   No fraudulent act is
proved, and it is affirmatively shown that there was neither
accident nor mistake in the execution of the deed.

Had appellant then been surrounded by kindred in affec-
tionate relations with him, or had it then have been known
to him, as a certainty, that he must in the near future be com-
forted and cared for by the affectionate wife and step-children
with which he has since been blessed, the act of making Dunn
an object of his bounty might have been regarded as a circum-
stance tending,—but even then only tending,—in connection

with other appropriate evidence, to show that he was incapable of managing and disposing of his property. But at the time the deed was made, situated as he was, there is nothing to excite surprise in his making Dunn the object of his bounty, any more than in his devising or conveying it to any one else.

Appellant's advanced age, and his great grief and his sickness, are certainly proper to be considered in determining whether he had the requisite mental capacity to execute a deed, or whether he was the victim of undue influence, or any manner of improper overreaching; but mere mental weakness will not authorize a court of equity to set aside an executed contract, if such weakness does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence. *Miller* v. *Craig*, 36 Ill. 109; *Lindsey et al.* v. *Lindsey*, 50 id. 79; *Uhlich* v. *Muhlke et al.* 61 id. 499. And no one, of all those present when the deed was signed, testifies to any act of imposition or undue influence, or ventures the opinion that appellant was not competent to transact business, or was not informed as to the effect of what he was doing. It is not to be presumed, in the absence of proof, that his trusted confidential agents, his attorney and business manager, whose legal duty it was to protect him in this respect, and who were present aiding him with their counsel, would have permitted him to sign a will or deed, if his freedom from improper influences or his mental condition was at all questionable. The charges of fraud, undue influence, imposition, etc., have no foundation in the evidence preserved in the record; and we must, in passing upon the remaining questions, proceed upon the assumption that the deed was made by one capable of contracting, and in all respects free and unaffected by improper extraneous influences.

The objection that it was intended by appellant and Dunn, that the deed was only to take effect after appellant's death, is completely answered by the evidence. There is nothing

in the deed itself which shows that such was the intention of the parties. There is no proof that there was any mistake in drafting it, and there is no proof that its delivery was to be suspended until after appellant's death. On the contrary, the proof is clear and without conflict, that, after the making of the deed, its delivery was only withheld until after the execution of the note and trust deed, and then it was to be and was delivered without accompanying condition or qualification. The execution of the trust deed is itself conclusive evidence that the parties all regarded the deed of the appellant as having then vested an absolute title in Dunn. Otherwise, the trust deed could not be operative, and there could be no necessity for its execution.

The suggestion of counsel for appellant, that the principles applicable in cases of gifts *causa mortis* are applicable here, is without force. Under our law appellant could have invested Dunn with title to the property in only one of two ways—by deed, or by will. He could not have done so by any parol directions. Besides this, the circumstance that appellant took from Dunn an obligation to pay him, either a sum in gross or a stipulated amount annually during his life, adopting either theory of the evidence on that question, effectually excludes the idea that he intended to resume the grant, whether he did or did not recover from the sickness with which he was then afflicted.

Appellant, as owner of this property, might devise it to Dunn by will, or he might deed it to him either absolutely or subject to such conditions or limitations as he should choose to impose. Dunn, accepting the grant, would, of course, accept it *cum onere*. Appellant first determined to devise the property to Dunn by will, and had this intention been carried out he would, of course, have retained the power of revocation. But this intention was subsequently changed, whether at the instance and request of Dunn, or of appellant's own motion, so long as in changing he did so voluntarily and freely, unaffected by improper extraneous influences,

we regard as of no consequence whatever. He had a right to change his intention, and he did change it. The evidence leaves no doubt upon our minds that, in making this change, appellant intended and supposed that he was reserving to himself an equivalent of the rent of the property during life; and thus, although then absolutely vesting Dunn with the title, he retained the same beneficial use of the property that he would had he permitted his will to stand, and his lease of the property to Dunn to stand, just as they were. Thus, appellant says: "On the 28th of January, 1876, Mr. Anthony Dunn, the defendant, requested me to give him a deed of the property. He promised, if I would give him a deed, it would save him (Dunn) trouble, after my death. He said that if I gave him the deed he would pay me rent if I lived, and would pay it to me for forty years after, if I should live that long. * * * I gave him the deed in the place of the will. * * At the same time the said Dunn gave me a note for $1300; he gave the trust deed for that $1300, in order to secure it." That is to say, in brief, appellant, instead of devising the property to Dunn by will, gave him an absolute deed for it; and, to secure himself in the beneficial use of the property during his life, he took from him a promissory note for $1300, secured by deed of trust on the property. This, then, changed what would otherwise have been but a gift, to a sale,— true, a sale exceedingly advantageous on the part of Dunn, in which there was a very large element of mere gift, but still a sale. Dunn, very naturally, did not object to this, because it was eminently profitable to him; but he was not bound to accept it, and when he did accept it and become party to the contract by the execution of his note for $1300, he became, in the strict technical sense of the law, a purchaser for value, as between himself and appellant. By this arrangement appellant, instead of granting the property as a gratuity, exacted and obtained a price for it, though that price was fixed by what was assumed as the value of the use of the property.

All prices for property are, presumably, affected to some extent in this way.

Appellant says he did not intend to collect the principal, and it is proved that the trustee executed a deed of release which he kept in his possession, and which, it is claimed, he intended to give Dunn upon appellant's death. So be it,— but this was mere *intention*, not *obligation*. There is no pretence that there was mistake in drawing the note or the trust deed. As we have before seen, they were drawn by appellant's legal adviser, pursuant to previous directions, and apparently with great care. This is the note :

" $1300.          .          *Chicago, January* 28, 1876.

" One year after date, I promise to pay to the order of Joseph Willemin $1300, with interest at ten per cent per annum, payable tri-monthly. Value received.          .

ANTHONY DUNN."

And the trust deed has this, among other provisions :

"And it is stipulated and agreed that in case of default in the payment of said promissory note, or interest, as aforesaid, or of a breach of any of the covenants or agreements herein mentioned, the whole of said principal of said promissory note and the interest thereon to the time of sale, may at once, at the option of the legal holder thereof, become due and payable, and the said premises be sold," etc. And the trustee is empowered to sell upon giving thirty days' previous notice by giving four publications—one in each week—in the "Chicago Legal News," or in any newspaper published at that time in the city of Chicago. These are the legal rights and obligations of the parties as they put them in writing.          .

Suppose Dunn had been sued upon this note, could he have pleaded that appellant only intended to collect the interest during his life ? Under what obligation is appellant in this respect ? This is not what the parties have written. ° Where is the evidence to sustain such a defence ? Manifestly, whatever appellant intended in regard to giving Dunn this note,

he retained the whole matter in his own hands.  Had it been intended to *bind* him to such a contract, why was it not so written?  Why were this note and trust deed executed in this form?

There is something in Dreyer's evidence, it is true, to the effect that Dunn obtained from appellant some sort of an obligation not to collect the principal of this note; but this is stated rather in an inferential or guessing way, than as the direct and positive assertion of a fact; and is contradicted by the evidence of Dunn.  Indeed, it seems to us strange, if such were the fact, why Dunn should not produce and rely upon the instrument, for, taking appellant's age into consideration, it would seem to be decidedly beneficial to him to do so.  We may add, in this connection, moreover, that the reading of Dreyer's entire evidence, as written in the record, has impressed us unfavorably in respect to his candor.

The evidence shows a tender to Dreyer of the amount due upon the note at a time when the note was in his possession as business manager of appellant, and his refusal to accept it. The bill to redeem was, under the circumstances proved, very clearly, properly filed.

The objections to the ruling in regard to the evidence, we conceive, in nowise affect the substantial merits of the case. In chancery cases the practice is not to reverse for erroneous rulings in the admitting or excluding of evidence, unless it is seen, after an inspection of the entire record, that different rulings might have induced a different decree.  No such effect, in our opinion, could have here resulted.

Complaint is made that a stipulation of Dreyer as to the amount due upon the note was acted upon, instead of referring the cause to a master to take and report an account, etc.  The stating of the account is proven to have been within the line of Dreyer's agency, and it is not perceived why this stipulation might not be accepted as evidence of a fact upon which the court might act in rendering a decree. Technically, probably, it could not, because not signed by counsel, be regarded

as an admission of record; but we incline to think it was admissible as a parol admission of a fact by an agent acting within the line of his duty. But it does not appear that appellant was in any degree prejudiced by this ruling. There is no pretence the amount stated is not the true amount due on the note. So, even if it be conceded to have been error to admit the statement, it is an error for which there should not be a reversal.

The decree of the Appellate Court is affirmed.

*Decree affirmed.*