ALEXANDER P. ARGO

*v.*

WILLIAM COFFIN *et al.*

` Filed at Springfield November 2, 1892.

142 368
148 44
142 368
177 89
80a 510
142 368
180 27
142 368
202 4620

1. DEED—*setting aside for incapcity of grantor — degree of mental weakness.* Before an heir can claim a decree setting aside a deed made by his ancestor, upon the ground of mental incapacity of the grantor, in the absence of proof of undue influence, he must show such a degree of mental weakness as to render the grantor incapable of understanding and protecting his own interests. The fact that his intellectual powers were somewhat impaired by age is not sufficient, if he still retained a full comprehension of the meaning, design and effect of his acts.

2. The fact that a party is physically unable to look after his property, or that his mind is enfeebled by age or disease, if not to the point of lunacy or imbecility, will not take from him the power and right to dispose of his property, by deed, as he pleases, there being no undue influence practiced.

3. SAME—*mental capacity—of facts evidencing.* A party about eighty-seven years of age, in poor health and childish, made a conveyance of a tract of land worth over $5000 to one of his sons for $2000, the grantor being incited thereto by the fear that a part of his land might be sold for a debt. He had the deed made and left it with a justice of the peace, not to be delivered, however, until the grantee should surrender his note of $1000 and take up his note held by a brother on the father, had his wife's dower retained in the deed, and required a contract giving him the use of the place for his life, after the execution of which he destroyed a will he had made : *Held*, that these acts of the grantor clearly indicated that he understood what he was doing, and comprehended the nature and effect of his acts.

4. SANITY—*presumption, and burden of proof.* The law presumes every man to be sane until the contrary is proved, and the burden of proof rests upon the party alleging insanity.

APPEAL from the Circuit Court of Piatt county ; the Hon. C. B. SMITH, Judge, presiding.

Messrs. LODGE & HICKS, and Mr. S. R. REED, for the appellant:

As to the question of the mental capacity of the ancestor, see *Clearwater* v. *Kimler*, 43 Ill. 272; *Stone* v. *Wilbern*, 83 id. 105; *Lindsey* v. *Lindsey*, 50 id. 79; *Kimball* v. *Cuddy*, 117 id. 213.

Sanity is presumed until the contrary is shown. *Guild* v. *Hull*, 127 Ill. 523.

Mr. C. F. MANSFIELD, for the appellees:

Capacity to make a valid deed—requisites of. Undue influence, or any manner of improper overreaching, is ground for setting aside a deed. Weakness of mind coupled with undue influence—its effect upon the validity of a deed. *Willemin* v. *Dunn*, 93 Ill. 516; *Miller* v. *Craig*, 36 id. 109; *Lindsey* v. *Lindsey*, 50 id. 79; *Uhlich* v. *Muhlke*, 61 id. 499; *Pickerell* v. *Morss*, 97 id. 226; *English* v. *Porter*, 109 id. 285, and cases cited; *Salisbury* v. *Aldrich*, 118 id. 199; *Freeman* v. *Easly*, 117 id. 317; *Keithley* v. *Stafford*, 126 id. 514.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This is a bill in chancery filed by appellees, who are a portion of the heirs-at-law of John Argo, deceased, for the purpose of setting aside a deed made by said John Argo, in 1879, to Alexander P. Argo, the appellant, to a tract of land containing one hundred and sixty-four acres, and for the further purpose of partitioning said land among the heirs of said deceased. The grounds upon which the bill proceeds are the alleged mental incapacity of John Argo, in 1879, to execute a deed of conveyance, and the undue influence alleged to have been exercised by appellant and by his brother, Solomon Argo, in obtaining the execution of the deed in question. At the hearing the circuit court found the allegations of the bill to be true, and that the equities of the case were with the complain-

ants therein, and rendered a decree in conformity with its prayer.

In the spring of 1879 John Argo was about eighty-seven years old, was in poor health and infirm, and quite childish, and was living on the one hundred and sixty-four acres of land in controversy with his wife, who was the step-mother of appellant. He had, some years before that, parcelled out all his other lands to his daughters and sons-in-law. His wife had, prior to that time, been sick for several months, and under the constant care of a physician, and the physician had rendered bills for his services, and for medicines furnished, amounting to $370, and John Argo was worried for fear the doctor would sue and get judgment, and sell a part of his farm. He was also indebted to his son Alexander P. Argo, the appellant, in the sum of $1000, and to his only other son, Solomon Argo, in a like sum of $1000. He sent for W. B. Bunyard, a justice of the peace, who died prior to the commencement of this suit, and said Bunyard prepared a deed conveying said one hundred and sixty-four acres of land to appellant, and it was executed and acknowledged by John Argo and his wife. The land was worth $35 an acre, or $5740 in all, and the consideration for which it was deeded, and the consideration mentioned in the deed, was $2000,—the $1000 owing to appellant and the $1000 due Solomon. The dower right of the wife of John Argo was expressly reserved in the deed.

William McKinley was living with John Argo and farming a part of the land. A few days before the deed was made he heard John Argo say that he was going to make a deed for the land to appellant, and he also testifies that he was called in from the field to witness the deed; that Mr. Bunyard, John Argo and his wife were there; that the deed was lying on the table; that Mr. Argo requested him to witness it, and spoke in his usual tone of voice.

The deed was taken from the house by Bunyard, who then notified appellant and Solomon Argo that he had the deed,

that it was to be delivered to appellant only upon his taking it in satisfaction of the indebtedness due him, and upon his assuming the $1000 due Solomon, and taking up and delivering to him (Bunyard) the notes given by the father to Solomon, and upon his entering into a written agreement to let John Argo and his wife have and keep possession of the land, and rent and manage the same for their individual use and support, for the lifetime of John Argo, and said wife to have dower in the land if she survived her husband. A written agreement to the above effect was signed by all three of the parties,— appellant, John Argo, and Martha Argo, wife of John Argo. The notes of the grantor in the deed made to Solomon Argo were procured by appellant and delivered to Bunyard, and the deed thereupon delivered to appellant, and recorded. The $370 due Dr. Knott was settled by notes signed by John, Martha, Alexander P. and Solomon Argo, and appellant afterward paid to Solomon the $1000 that he had assumed. It also appears that John Argo had executed a will, attested by two witnesses, in 1874 or 1875, but that after the making of the deed of 1879 he burned it.

We have carefully read and examined the entire testimony contained in the record. It is too voluminous to consider in detail. It does not sustain the charge that either appellant or his brother Solomon exercised undue influence over their father in order to procure the making of the conveyance. They both testify, positively, that they did not have any conversation with their father in regard to making a deed, did nothing to induce him so to do, and were not present when it was made. The other testimony in the case is entirely consistent with these statements of their's. Nor does the evidence show that the justice of the peace who made out the deed and took the acknowledgment used any improper means in order to induce the execution of a deed. It clearly appears that John Argo was too old and infirm to actively attend to business; that for several years he was confined to his own house

and yard; that he was frequently down sick in bed; that he was often unable to attend to his own physical wants and needs, and that he was childish and fretful, and frequently took but little interest or concern in what was going on around him. This is, we think, as far as the evidence can fairly be said to go. Upon the question whether or not he had sufficient mental capacity to understand ordinary business affairs and comprehend the nature and effect of a deed, there was very great conflict in the opinions of the numerous witnesses who were examined. Upon this matter of opinion it is difficult, if not impossible, to tell upon which side the preponderance is. The law presumes every man to be sane until the contrary is proved, and the burden of proof rests upon the party alleging insanity. (*Menkins* v. *Lightner*, 18 Ill. 282; *Guild* v. *Hull*, 127 id. 523.) In *Lindsey* v. *Lindsey*, 50 Ill. 79, this court said: "Before a complainant can claim a decree, in the absence of undue influence, he must show such a degree of mental weakness as renders a party incapable of understanding and protecting his own interests. The circumstance that the intellectual powers have been somewhat impaired by age is not sufficient, if the contracting party still retains a full comprehension of the meaning, design and effect of his acts." In *Kimball* v. *Cuddy*, 117 Ill. 213, we said: "The property owner, unless an idiot or lunatic, must be allowed to make his own division and disposition of his property. Nor does the fact that a party is physically unable to look after his property, or that his mind is enfeebled by age or disease—if not to the point of lunacy or * * * imbecility—take from him this power." In *Willemin* v. *Dunn*, 93 Ill. 511, we said: "Mere mental weakness will not authorize a court of equity to set aside an executed contract, if such weakness does not amount to inability to comprehend the contract." *Wiley* v. *Ewalt*, 66 Ill. 26, *Stone* v. *Wilbern*, 83 id. 105, *English* v. *Porter*, 109 id. 285, and numerous other cases decided in this court are to like effect. And, the conveyance being made to a son, and under

the circumstances of this case, and the dower of the wife being reserved, and also the use of the premises during the joint lives of the grantor and his wife, the fact that the land was conveyed for much less than its value,—for $2000, when it was worth over $5000,—affords no evidence whatever of mental imbecility. *Clearwater* v. *Kimler*, 43 Ill. 272; *Lindsey* v. *Lindsey, supra; Guild* v. *Hull, supra.*

In the case at bar we think that the facts that the grantor conceived the idea of deeding the farm to his son in order to prevent Dr. Knott from selling any part of it on execution; that several days before the execution of the deed he announced his intention to make the conveyance; that he asked McKinley to witness the deed; that he fixed the consideration in the deed at the amount of his indebtedness to his two sons; that he reserved therein the dower right of his wife; that he placed the deed, when executed, in the hands of the justice of the peace, with directions not to deliver it to appellant until appellant signed the written contract permitting him (the grantor) to retain the possession and use of the farm during the remainder of his life, and also delivered to the said justice the promissory notes that the grantor had made in favor of Solomon Argo, and that upon the execution and delivery of the deed he burnt and destroyed the will that he had made some four or five years before, clearly indicate that such grantor understood what he was doing, and comprehended the nature and effect of his acts, and of the deed which he signed and acknowledged.

Our conclusion is, that the decree of the circuit court was erroneous. It is reversed, and the cause is remanded, with directions to dismiss the bill of complaint for want of equity.

*Decree reversed.*