### Jacob Severns, Appellee, v. John Broffey, Appellant.

1. PRESUMPTIONS—*as to continuance of mental incapacity.* After an inquest finding a person distracted, the presumption prevails that such distracted condition continues until rebutted by evidence showing the contrary.

2. EVIDENCE—*admissions by distracted person.* Admissions of a distracted person, like the admissions of infants, are not binding and constitute no substantive proof.

Action commenced before justice of the peace. Appeal from the County Court of Fulton county; the Hon. JOHN D. BRECKENRIDGE, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed March 30, 1910.

M. P. RICE, for appellant.

MARVIN T. ROBISON, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit originally instituted on April 13, 1908,

before a justice of the peace, by Jacob Severns against John Broffey to recover the amount alleged to be due on a certain promissory note bearing date March 10, 1897, for the principal sum of $73 signed John Broffey and Mary Broffey by their marks, and bearing an endorsement of an alleged credit of $40 under date of November 8, 1902. The defendant John Broffey was adjudged a distracted person on November 16, 1903, and on November 20, 1903, one A. M. Barnett was appointed his conservator and is still acting as such. From the judgment of the justice of the peace an appeal was taken to the county court of Fulton county, where A. M. Barnett entered his appearance as conservator of said Broffey to defend said action, and there filed his denial under oath of the execution of the said note by said Broffey and also his denial under oath that the alleged credit endorsed thereon was made, authorized or ratified by said Broffey. A trial of the case in the county court by the court without a jury resulted in a finding and judgment against the defendant for $88.37.

The only evidence offered by the plaintiff upon the hearing was the testimony of several witnesses as to certain statements made to them by Broffey upon the occasion when he appeared in the justice's court, which statements were received by the trial court over the objections of the defendant, as admissions by Broffey of his liability upon the note. Oscar Freilly, the justice of the peace before whom the hearing was had, testified in substance as follows: "I showed the note to John Broffey and read it to him. I said: 'John did you give this note, did you make this payment?' He says: 'Yes.' I turned it over showing the endorsement on the back of it and says: 'Is that right' and he says: 'Yes' and I says: 'Then you think it would be right for me to give Mr. Severns judgment?' and he says: 'Yes.' I knew John Broffey when he was found distracted, and he is in the same condition now that he was then. I think he is just as rational now as he was

then and in the same condition then as now." John Gauper testified that he had known Broffey fifteen to eighteen years and was present at the trial before the justice of the peace; that in answer to the question as to what Broffey said after the note was read over to him Broffey said it was his note, that he had made payment on the note; that Broffey "was just as smart now as ever. I think he understood what was being said to him"; that he remembered Broffey when the latter was adjudged distracted and Broffey was about in the same condition that he was then and understood just as good as he ever did, just as good as when he was declared distracted; that he did not think Broffey was distracted then. Squire Butler testified that he had known Broffey fifteen years, had seen him now and then among other neighbors and had spoken to him; that after the justice of the peace read the note to Broffey the latter "claimed he made the payment on the note". In answer to the question whether or not in his opinion Broffey then apparently understood what he was saying and what was being said to him the witness said: "I think Mr. Broffey knowed". The witness further testified that the mental condition of Broffey was about the same as when he first saw him and when he was adjudged distracted; that he was peculiar in some ways. In answer to a question as to whether in his opinion Broffey was a distracted person when the hearing was had before the justice of the peace he said: "I think he was, yes," and upon the suggestion of counsel that the witness did not understand the question the question was in substance repeated to the witness, whereupon he replied: "I don't think he was". The only other evidence in the case was the testimony of Barnett, the conservator of Broffey, who testified that Broffey could neither read nor write. This evidence is wholly insufficient to sustain the finding and judgment in this case.

After inquest finding a person distracted the pre-

sumption prevails that such distracted condition continues until rebutted by evidence showing the contrary. Menkins v. Lightner, 18 Ill. 282; Titcomb v. Vantyle, 84 Ill. 371.    None of the witnesses called on behalf of the plaintiff assumed to testify that there had been a change in the mental condition of the defendant after inquest, but they all testified in substance that at the time the defendant made the alleged admissions, his mental condition was the same as it was when he was adjudged distracted.    Clearly the witnesses could not be heard to impeach the finding of the court adjudging the defendant to be distracted, and their testimony properly considered tends to show that the defendant was in the same condition mentally when he made the alleged admissions as he was when he was adjudged a distracted person.    If the defendant had testified as a witness in the case, by his answers to direct and cross-interrogatories propounded to him, he might have developed the fact that he had been restored to sanity at the time he made the alleged admissions, but no such conclusion can be drawn from the evidence in this record.    Moreover, we are of opinion, that upon the evidence in this record the alleged admissions of the defendant were not binding and constituted no substantive proof of plaintiff's case.    In respect to the effect to be given admissions of infants and persons *non compos mentis* the same general rule is applicable. In Knights Templars Indem. Co. v. Crayton, 209 Ill. 550, it was held that infants are not bound by their mere admissions; that they can neither make them nor authorize any other person to make them for them. In Chicago City Ry. Co. v. Tuohy, 196 Ill. 410, it was said: ''An admission if it is legally an admission must be made by some one legally capable of making the same.''

The judgment of the county court is reversed and the cause remanded.

*Reversed and remanded.*