JOHN NOLAN, Appellee, vs. MARTIN ZAGAR et al.
Appellants.

*Opinion filed December 16, 1914.*

DEEDS—*when deeds will be set aside as obtained by fraud.*
Deeds to property conservatively estimated as worth $3500 and
made for an alleged consideration of $1800 will be regarded with
suspicion by the courts and are properly set aside, where the evi-
dence tends to show that the grantor for several months had been
drunk almost continuously, that he was suffering from alcoholism
about the time he executed the deeds, was afflicted with delirium
tremens the day before the last deed was executed, and that the
grantees in the deeds were husband and wife, the husband being a
saloon-keeper, in whose saloon the grantor obtained most of his
liquor and spent much of his time.

APPEAL from the Circuit Court of Will county; the
Hon. DORRANCE DIBELL, Judge, presiding.

EDWARD R. NADELHOFFER, for appellants.

EDWARD CORLETT, and GEORGE J. CLARE, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellee, John Nolan, filed a bill in the circuit court
of Will county against Martin Zagar and Veronika Zagar
for the purpose of canceling and having set aside two deeds
purporting to have been executed by appellee to Martin
Zagar, conveying lots 11 and 12, respectively, in a certain
subdivision in the village of Rockdale. The ground upon
which the cancellation is sought is that appellee was in-
toxicated at the time the deeds were alleged to have been
executed, to such an extent that he was unable to compre-
hend and understand the nature of the transaction. The
answer denied that appellee was intoxicated at the time the
deeds were executed, and the issue was tried before the
chancellor upon testimony produced in open court. The
court found the allegations of the bill to be true and that

appellee was suffering from alcoholism, as a result of protracted and excessive drinking, to such an extent that he was *non compos mentis,* and granted a cancellation of the deeds and entered a decree in respect to other accompanying transactions which placed the parties *in statu quo.* To reverse this decree defendants below have prosecuted this appeal, and assign as the only error complained of, that the decree is not supported by the evidence.

A general outline of the facts as shown by the testimony is as follows: Appellee had been employed by the Rock Island Railroad Company for eighteen years prior to June, 1913. He had charge of the coal chutes for the company. At that time he owned the two lots in question and they were unencumbered. One of the lots was improved with a building, the front of which was rented for a store and appellee lived in the rear. He also had $5000 in money and was clear of debt. In June, 1913, he ceased to work for the railroad company and began the excessive use of intoxicating liquors and continued such habit up until the time the deeds in question were executed. Between June and December, 1913, he squandered the $5000 in cash and placed a mortgage of $1000 on his real estate and squandered that also. Appellant Martin Zagar was a saloon-keeper, and appellee spent much of his time and money in his place. During the latter part of November and first part of December appellee was suffering from alcoholism, and his physician testified that he was threatened with delirium tremens.

The evidence tends to show that the two lots conveyed to Zagar were worth from $3000 to $4000. The court below found the value to be $3500, and this is well within the range of the testimony upon that question. Zagar claims that the consideration for the two deeds was $1800, which was to be paid by the surrender of a $450 note which he claims he held against the appellee, an agreement to pay a judgment against appellee for $194.70 and certain taxes

and special assessments against the property, and the assumption of the $1000 encumbrance upon the lots. Zagar contends that the aggregate amount of the debts assumed by him, together with the $450 note, exceeded the $1800 consideration which he was to pay for the lots in the sum of $124.60, for which the appellee executed to him a note. None of the indebtedness which Zagar verbally agreed to. assume and pay was, in fact, paid by him. The only part of the pretended consideration for these deeds that Zagar actually paid was the surrender to appellee of the $450 note. The execution of the $450 note is denied by appellee, and he proved by the paying teller of the bank that the signature to the note did not appear to be the genuine signature of appellee. The bank teller testified that he had been familiar with appellee's signature for fifteen years and had often seen him write, and that he would not recognize a check signed as this note was, as the genuine check of appellee. The court below directed a return of this note to appellants without prejudice. The legal rights of the parties in respect to that note are not involved in this proceeding. The court below very properly left the parties in a position to have their rights in respect to this note determined in a legal forum, unembarrassed by this proceeding, wherein the note is only incidentally involved.

The difference between the value of the lots, which is conservatively estimated at $3500, and the pretended consideration of $1800 claimed to be the consideration for the deeds, is so great as to arouse a suspicion that the conveyance was the result of fraud, or that the grantor from some cause was mentally incapable of properly protecting his own interest. A careful consideration of the evidence confirms this suspicion, and induces the firm conviction that the appellant Martin Zagar took advantage of the besotted condition of appellee, which was to a large extent brought about by drinking intoxicating liquors in Zagar's saloon, for the purpose of obtaining title to all of the property

that appellee possessed in the world, for about one-half its actual value.

One of the deeds in question was dated December 1 and the other December 9, 1913. Many witnesses who saw appellee frequently during the latter part of November and the first part of December testify that he was drunk every day; that he was intoxicated to such an extent that he could not take care of himself; that he at times was unable to speak on account of his intoxication. Joseph Pierce, night policeman of the village of Rockdale, testified that appellee had been drunk day and night for three or four months; that he had seen him coming out of Zagar's saloon many times. The evidence shows that a witness by the name of William Kelley, who testified for appellants, was friendly to appellants, and that he was instrumental in bringing appellee into Zagar's saloon on different occasions just prior to the time the deeds were executed. The evidence tends strongly to show that Kelley was co-operating with Martin Zagar in the scheme to secure a conveyance of appellee's property. Kelley and Martin Zagar were seen on different occasions with appellee when he was too drunk to take care of himself. The witness Kavanaugh saw appellee frequently during the months of November and December, 1913, and he testified that he was drunk all the time; that he saw him frequently drinking in the Zagar saloon. Many other witnesses testified to appellee's condition and to the same general effect. Dr. McRoberts testified that he was called professionally to attend appellee on December 4; that he found him in his rooms in the back of the store and that he was at that time on the verge of delirium tremens; that he gave him treatment for alcohol-ism. He testified that appellee was at that time flighty and that he was constantly talking to himself. He called again on the 8th of December, and he testified that at that time appellee had snakes, was shaking and could not keep still, and was talking deliriously. This condition existed on the

day before the second deed was executed. It is true that some of the witnesses who were present when the deeds were executed expressed the opinion that the appellee was sober and that he fully understood what he was doing. We do not see how this condition could exist consistently with the testimony of the physician and others who had an opportunity to know the actual condition of the appellee just before and immediately after the alleged transactions. Appellee testified in his own behalf that he has no recollection whatever of ever signing either of said deeds, and the signature thereto is shown not to resemble his usual and ordinary writing. There is some evidence tending to prove that at the time the alleged deeds were signed someone held appellee's hand and assisted him in putting his signature thereto. After a protracted debauch, lasting some three months, it is difficult to believe that the mind can so quickly resume a healthy and vigorous condition. It is contrary to reason to expect that one whose mind has been broken down by a long continued course of dissipation would so quickly resume a normal condition that he could properly protect himself in an important business transaction. We cannot believe that the half sober interval following immediately after such a debauch is a lucid interval, within the meaning of the law. The prostration and physical suffering that would immediately follow upon such a continuous career of drunkenness would certainly make the sufferer an easy victim of anyone who sought to influence his action.

Without going into the evidence in greater detail, we agree with the trial court that appellee has established the allegations of his bill and that these deeds were properly set aside. The evidence convinces us that the appellee was in such a condition of mind as a result of his protracted drunkenness, largely caused by the appellant Martin Zagar, that he was an easy victim of Zagar's designs, and that an unfair advantage was taken of his situation to procure from

him an unreasonable and unconscionable bargain, and in this situation a court of equity will interfere and rescind the contract. (*Menkins* v. *Lightner,* 18 Ill. 282; *Dahlmann* v. *Gaugente,* 238 id. 224.) Where, as here, a chancery case has been tried on evidence heard by the chancellor in open court, his finding will not be set aside by a reviewing court unless it is clearly and palpably against the weight of the evidence.

The decree of the circuit court of Will county in this case is in accordance with the clear weight of the testimony, and it should be and is affirmed.

*Decree affirmed.*