JOHN W. EGBERS *et al.*

*v.*

FRANCIS M. EGBERS *et al.*

*Opinion filed December 21, 1898.*

1. WILLS—*apparent preponderance against verdict does not warrant setting it aside.* An apparent preponderance of the evidence in favor of the proponents of a will does not warrant the Supreme Court in setting aside a verdict for the contestants, particularly after two trials with the same result, where there is a material conflict and the evidence on either side is sufficient to support a verdict.

2. EVIDENCE—*declarations by only beneficiary interested in sustaining will are admissible on contest.* In an action to set aside the probate of a will on the ground of mental incapacity and the physical inability of the testatrix to execute a will, a declaration by one of the defendants on the morning the alleged will was executed, that the testatrix was "just alive and that is all," is admissible, where he is the only beneficiary interested in sustaining the will.

3. SAME—*burden of proof—when shifting and when stationary.* The burden of proof, in the sense of producing evidence to meet a *prima facie* case, passes from party to party as the case progresses, but the burden of establishing the truth of an issue by a preponderance rests upon and remains with the party having the affirmative.

4. SAME—*law relating to burden of proof in will contest.* In an action contesting the validity of a will on the ground of mental incapacity and the want of proper execution, the proponents must make a *prima facie* case as to execution and mental capacity; but the contestants have the burden of overcoming such *prima facie* case, and the added legal presumption in favor of sanity, by a preponderance of the evidence on the whole case.

5. INSTRUCTIONS—*referring to will as "the purported will" is not ground for reversal.* Using the term "the purported will" in instructions for the contestants is not ground for reversal, as being a statement by the court discrediting the instrument as a will.

6. SAME—*one cannot complain of error he has asked the court to commit.* One cannot complain of error in his opponent's instructions where his own contain the same defects.

7. COSTS—*when costs on setting aside will are properly assessed to defendant.* On setting aside a will the court may properly assess the costs against the only defendant interested in sustaining it.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. G. W. THOMPSON, Judge, presiding.

O'HARRA & SCOFIELD, and WILLIAM H. HARTZELL, for plaintiffs in error.

SHARP & BERRY BROS., and TRUMAN PLANTZ, for defendants in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by defendants in error to contest the validity of an instrument purporting to be the last will of Magdalena Egbers, and to set aside the probate thereof. The bill alleged that the alleged will, dated August 7, 1896, was probated in the county court of Hancock county; that it was never signed or published by Magdalena Egbers, and that she was at the time of its alleged execution so sick with fever that she was unable to execute an instrument of any kind; that she was unconscious and out of her mind; that she was very low with typhoid fever, unable to sit up in bed or to write or understand anything about the disposition of her property, and that she had made a valid will three years before. The will sought to be set aside is as follows:

"STATE OF ILLINOIS, }
  *County of Hancock.* }                                *August 7, 1896.*
  "I want all my legal heirs to have $100 dollars and the remainder to John W. Egbers, the land and household, to use as he sees fit, as he is my executor.

VIOLA EGBERS.

MAGDALENA EGBERS,
MISS MARY SCHAFFNER,
ANNIE MCARTHUR."

The land contained eighty acres, and was valued at about $4000. Issues were made and tried before a jury, and a verdict was returned that the said instrument was not the last will and testament of Magdalena Egbers. This verdict was set aside, and another trial had with the same result. A decree was then entered setting aside the alleged will and the probate thereof, and that John W. Egbers pay the costs. Proponents have sued out this writ of error to reverse the decree.

The testimony showed that Magdalena Egbers was an old lady eighty-two years of age, living alone; that about ten days before the alleged execution of the will she was found sick at her house, and that her son John, the principal devisee, then removed her to his own house for proper care and attention; that she had typhoid fever, and that her temperature ranged from 102 to $104\frac{1}{2}$ degrees; that she had been ill about ten days before her removal to her son's house; that the will was made Friday morning, August 7, 1896, about eight o'clock, and that she died in the evening of the following day. The testimony was conflicting as to her mental and physical condition on the day the will was executed. The subscribing witnesses were Mary Schaffner, a neighbor, and Annie McArthur, a domestic in the family. The former had called to see Magdalena Egbers, and found her asleep and Robert Egbers, her son, fanning her. Mrs. Schaffner testified that she took the fan and said to Robert that he could go out a while, as he had been sitting up at night; that he went out, and Magdalena Egbers, being then awake, talked with her; that she was very sick and weak; that Mrs. John Egbers came in, and Robert came back and sat upon a chair and went to sleep, and Mrs. John Egbers told him to go up-stairs and lie down; that he did so, and after he was gone Magdalena Egbers told Mrs. John Egbers to get a piece of paper—that she wanted something written down; that when the paper was brought she said she wanted to make a little difference in her will; that she wanted John Egbers to have the place, and the house and lot, and the rest $100 each. She further testified that Mrs. John Egbers sat by the bed and wrote what Magdalena Egbers told her to write, and called Annie McArthur, the other subscribing witness; that Magdalena Egbers sat up in bed with some assistance from her and wrote her name to the will; that she asked witness to sign as a witness, but witness told her she could not write, and that Mrs. John Egbers

took hold of witness' hand and helped her to write her name. Annie McArthur gave similar testimony, and testified that she signed as a witness at the time and at the request of Magdalena Egbers. No one was present except those mentioned. Both of the subscribing witnesses testified, in substance, that Magdalena Egbers was entirely rational, clear and sound of mind, and that she fully understood what she was doing when she signed the will. The genuineness of her signature was proved also by her banker, with whom she had often transacted business and deposited money. Her physician testified that he attended her from August 1 until Friday morning about six o'clock, August 7. When he first saw her she was in a stupor and her fever very high and she was practically unconscious, but that at other times she was fully conscious, seemed bright and entirely rational, and frequently joked with him, and was so when he left her about six o'clock Friday morning (which was about two hours before the will was made); that she was very weak, but was sitting up in bed eating a piece of cracker and drinking some coffee; that she held the cup herself; that he thought her mind was sound at that time; that his visits were always in the morning, when she was at her best and would have less fever and be brighter than later in the day.

There was some other evidence tending circumstantially to show the competency of the testatrix to make a will, and had the verdict of the jury and the decree of the court established the validity of the will, it is very clear such decree would not have been reversed on the evidence. There was other evidence, however, tending to prove not only that she was mentally incompetent at the time, but was also physically unable to sit up in bed, whether assisted or not, and write her name. She was in the last stage of a fatal case of typhoid fever and was eighty-two years old, but previous to her last sickness she had enjoyed good physical and mental health. Wit-

nesses who saw her Thursday night, and on the Friday morning a few hours before the will was executed, testified, in substance, that she was a part of the time in a stupor,—only semi-conscious; talked as if to her children who had long been dead; that she was thought to be dying, was wholly unable to sit up, and was incompetent to transact business of any kind. The will was drawn by the wife of the principal beneficiary, and was signed in a plain, smooth hand, in German script. The contestants produced five physicians, who, in answer to hypothetical questions, gave expert testimony to the effect that the testatrix would have not been able, mentally or physically, to perform the acts testified to by the subscribing witnesses. There was other testimony tending to sustain this view, but we think it unnecessary to rehearse the evidence any further than to show that there was a material conflict upon the facts, and evidence on either side sufficient to support a verdict.

There were two trials, and the verdicts of both juries were the same, and while it may appear from the record before us that the proponents made out the stronger case upon the facts, it must be considered that the jury and court below saw and heard the witnesses and had better means of weighing their testimony than we have. We cannot, upon the record, say the verdict was manifestly wrong or against the evidence, and while we might have been better satisfied, from the evidence in the record, with a different verdict, the rule of this court has long been not to interfere with the verdict in such cases. And especially should this rule be adhered to where a second trial has produced the same result. *Hill* v. *Bahrns,* 158 Ill. 314; *Sullivan* v. *Dollins,* 13 id. 85; *Bloom* v. *Crane,* 24 id. 49; *Bloomer* v. *Denman,* 12 id. 240; *Goodell* v. *Woodruff,* 20 id. 192; *Chicago and Rock Island Railroad Co.* v. *Hutchins,* 34 id. 108; *O'Brien* v. *Palmer,* 49 id. 72; *Howitt* v. *Estelle,* 92 id. 218; *Kightlinger* v. *Egan,* 75 id. 141; *Greene* v. *Greene,* 145 id. 264; *McCommon* v. *McCommon,* 151 id. 428.

This is the principal question in the case, but counsel for plaintiffs in error contend that erroneous rulings of the court influenced the jury to bring in the verdict rendered. It is said that improper hypothetical questions were permitted to be answered by the expert witnesses, against the objections of counsel for the proponents. The objections are that they were not based on the evidence and that they were not stated hypothetically, but positively. We have examined these questions, which are somewhat lengthy, and which are not altogether perfect in form, but we regard the objections urged as hypercritical. A jury of ordinary intelligence would understand these questions were hypothetical. Such is their purport from the outset, and there was sufficient evidence before the jury to sustain them. The jury could not have been misled by them, as contended, for they were fully instructed by the court as to their nature and purpose.

It is also contended that it was error to permit proof of the statement of John W. Egbers, the sole beneficiary seeking to sustain the will, made on the morning that the will was executed, to the effect that his mother was just alive and that was all. There was no error in this. He was the only beneficiary under the will interested in maintaining it. The statements proved were against his interest and affected him alone. *Blattner* v. *Weis*, 19 Ill. 246; *McMillan* v. *McDill*, 110 id. 47; *Campbell* v. *Campbell*, 138 id. 612.

It is next urged that the court erred in giving to the jury the following instruction at the request of the contestants:

"You are instructed that the burden of proof is upon the proponents to show that the will offered by them was signed by Magdalena Egbers on August 7, 1896, and unless he has proven such execution by a preponderance of the evidence you should find for the contestants. But if you believe, from the evidence, that Magdalena Egbers

did execute the instrument offered as a will, and that the same was attested by two credible witnesses in her presence, and that the two subscribing witnesses have sworn that at the time she executed it she was of sound mind, then the burden shifts, and the contestants assume the burden of proving the testatrix was not of sound mind, as defined in these instructions."

It is said that this instruction required the proponents, throughout the whole case, to sustain the burden of proving the signing of the will, whereas, it is contended, the burden of proving the execution of the instrument, as well as the alleged unsoundness of mind of the testatrix, after a *prima facie* case had been made by the proponents, shifted to the contestants, who were required to prove, by a preponderance of all the evidence, the allegations of their bill that she never signed or executed the same.   As said by the learned author of the article entitled "Burden of Proof" in 5 Am. & Eng. Ency. of Law, (2d ed.) the term "burden of proof" has two distinct meanings: by the one is meant the duty of establishing the truth of a given proposition or issue by such a *quantum* of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a *prima facie* case. (See notes and cases there cited.)   Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails.   This burden of proof never shifts during the course of a trial, but remains with him to the end.

This court has repeatedly said that the law presumes every man to be sane until the contrary is proved, and

the burden of proof rests upon the party alleging insanity. (*Argo* v. *Coffin*, 142 Ill. 368; *Guild* v. *Hull*, 127 id. 523; *Menkins* v. *Lightner*, 18 id. 282.) But it is incumbent on the proponents of the will to make out a *prima facie* case in the first instance, by proper proof of the due execution of the will by the testator, and of his mental capacity, as required by the statute. The burden of proof is then upon the contestants to prove the allegations of their bill, by a preponderance of all of the evidence, that the testator was mentally incompetent. The law throws the weight of the legal presumption in favor of sanity into the scale in favor of the proponents, from which it necessarily results that upon the whole case the burden of proof rests upon the contestants to prove the insanity of the testator. (*Craig* v. *Southard*, 162 Ill. 209; *Same* v. *Same*, 148 id. 37; *Taylor* v. *Pegram*, 151 id. 106; *Wilbur* v. *Wilbur*, 129 id. 392; *Carpenter* v. *Calvert*, 83 id. 62.) We are not called upon to consider in this case whether the rule relating to the burden of proof is the same in its application to both questions raised by the pleadings, viz.: First, that Magdalena Egbers did not sign the alleged will; and second, that she was mentally incompetent to make a valid will. There is the natural presumption that she was sane, which, with all of proponents' evidence, must be overcome and sufficient evidence adduced, so that upon the whole evidence there is a preponderance in support of the allegation in the bill of her mental unsoundness, before the will can be set aside on that ground. (See cases cited above.) But there is no presumption that she signed the will, except that which the law raises from the *prima facie* case made by the proponents. But whether any distinction can be drawn or not, (*Purdy* v. *Hall*, 134 Ill. 298; *McCommon* v. *McCommon*, 151 id. 428,) it is a sufficient answer to the point made on the instruction, that the court gave to the jury two instructions at the request of the proponents, which, in the respect mentioned, were in substance the same as the instruction complained of,

and they cannot be heard to complain of an alleged error which they asked the court to commit.

Other instructions are criticised because in them the will was mentioned as "the purported will," and it is said the court thereby discredited the instrument as a will. We are not of that opinion. The question being tried was whether it was Mrs. Egbers' will or not. It did purport to be a will, and the instructions simply so described it. That designation was more accurate than that of "the will." It is much less objectionable than "pretended will," which in *Keithley* v. *Stafford*, 126 Ill. 507, this court condemned but held insufficient ground upon which to base a judgment of reversal, in view of the full charge to the jury.

Nor do we find that instructions 7 and 10 given on behalf of the contestants are open to the objection made, that they assumed and stated matters to the jury as having been proved which were not proved in the manner stated. They stated the evidence with substantial correctness, as we read it, and we find no error in them. The will was executed on Friday morning, August 7, 1896, while Mrs. Egbers was in bed and in the last stage of a fatal case of typhoid fever, or not at all. All of the proponents' evidence on the subject was to the effect that she sat up in bed while she signed the will,—some to the effect that she was assisted, and some otherwise. Its execution at any other time was inconsistent with all the evidence on the subject.

Other criticisms are made of other instructions, but in our opinion they are unwarranted.

It is alleged as error that the decree adjudged that the proponent John W. Egbers should pay the costs. He was the only beneficiary seeking to maintain the will—all others were assailing it. We see no reason why the costs were not properly taxed against him.

The decree must be affirmed.        *Decree affirmed.*