**Charles Caley, Appellee, v. Daniel Manicke, Appellant.**

**Gen. No. 11,423.**

Second District, First Division.
February 23, 1961.
Rehearing denied March 30, 1961.

Sears, Streit & Tyler, of Aurora, for appellant.

Blowitz & Ozmon, of Chicago, for appellee.

SMITH, P. J.

Plaintiff sued for personal injuries and recovered $20,000.00. Defendant assigns the following errors: (1) Striking of evidence going to the issue of proximate cause; (2) Plaintiff's 'per diem' argument; (3) The use of a chart in connection therewith; (4) Prejudicial statements in argument; and (5) Instructions. We will discuss them in that order with particular emphasis on the first three.

. . . . . .

The proximate cause issue is somewhat involved. During the cross-examination of plaintiff, defendant

elicited admissions that he had been involved in automobile accidents both before and after the occurrence sued on. This occurrence took place on April 16, 1956 while plaintiff was driving to work. The evidence showed that after crossing an intersection defendant had crashed into him from the rear resulting in severe "whip-lash" injuries. The cross-examination, to which plaintiff made timely objection, is as follows:

Q. Now, around the first of March you had an accident, is that correct, before this one?

. . .

The Court: Are you going to connect it up?
Defendant's Counsel: Yes, I am.

. . .

I was stopped at a sign. I was bumped in the rear by a little Henry J—pushed my trunk handle in and that was it. The only damage was around the handle of the trunk. I could have pounded that out myself, but still left the imprint of the handle. I pounded some of it.

. . .

Q. Now, following this accident, and directing your attention to April, 1957, were you involved in an accident on that occasion on Route 62 and Busse Highway?

. . .

The Court: Connect it up?
Defendant's Counsel: Sure I am, your honor.

. . .

A. Yes. On that occasion my front headlight was struck. . . .
Q. After this accident happened, didn't an accident in your home happen where you fell on the rug and landed on your back? A. No sir.

Defendant offered no evidence to "connect" these accidents with plaintiff's injury, and instead argues,

that when viewed in connection with plaintiff's own medical testimony, there is a sufficient connection shown, that even standing alone, there is a sufficient relationship, and that in any event, no duty devolved on him "to connect it up," because the burden of proof on the issue of proximate cause is always with the plaintiff and never shifts. The trial court disagreed, struck the testimony and instructed the jury to disregard it. Defendant says that in doing so, the court was improperly shifting the burden of proof to his shoulders and in effect, was directing a verdict against him on the issue of proximate cause, that is, that the court was telling the jury that these accidents had nothing to do with plaintiff's injuries and, by the same token, that plaintiff had, as a matter of law, shown a causal relationship between his injuries and the accident sued on. Defendant also argues that this redounded to the benefit of plaintiff by heightening the credibility of his medical witnesses.

 The general rule is that the burden of proof rests on the party who has the affirmative of the issue, as determined by the pleadings, and the usual test employed to determine on which side the burden of proof lies, is to ascertain which party would be entitled to a verdict if no evidence were offered. While the burden of going forward with the evidence may shift from party to party, the burden of proof never shifts during the course of the trial and remains on the party asserting the affirmative of the issue. Noyes v. Gold, 310 Ill. App. 1, 34 NE2d 1. True, the burden of connecting up these 'before and after' occurrences, as either contributing (before), or intervening (after) causes, devolved on defendant, but this is not shifting the burden of proof. To phrase it another way, because plaintiff did not have a duty to negate affirmatively as part of his case the causal relationship between these 'before and after' occur-

rences and the one he sued on, is not saying that plaintiff was relieved of the burden of demonstrating that his injuries were proximately caused by the occurrence of April 16. In like measure, the fact that plaintiff bore this burden successfully does not mean that it then shifted. It did not. The burden of proof is not cast on a defendant in giving him the right of defending himself against a prima facie case, if by burden of proof the defendant means that the plaintiff was relieved from establishing his case at the onset.

In Hederick v. Uptown Safe Deposit Company, 21 Ill. App.2d 515, 159 NE2d 58, there is a quotation from Thayer's Preliminary Treatise on Evidence, 378, which neatly summarizes the situation:

> "We see that the burden of going forward with the evidence may shift often from side to side; while the duty of establishing his proposition is always with the actor and never shifts."

And as pointed out by Professor Edward W. Cleary, Handbook of Illinois Evidence (1956), the burden of proof actually has two aspects (page 70): "(1) the burden of producing evidence as to a particular matter, and (2) the burden of persuading the trier of fact as to the existence thereof. Egbers v. Egbers, 177 Ill. 82, 52 NE 285 (1898)." He further states: "The burden of producing evidence may shift from party to party as the case progresses, but the burden of persuasion never shifts."

Proximate cause was a part of plaintiff's case. It was as indispensable as the elements of defendant's negligence, plaintiff's freedom therefrom, and damage. Without it, plaintiff's action would have failed. But when he has borne the burden of proof and established the material elements necessary to make out a case, it is then the defendant's right, but certainly

not his duty—to put on his defense. This is not shifting the burden of proof. One cannot be said to have a burden if one may pick it up or not as he pleases. Obviously if there is evidence negative of causation, a defendant should show it, but the law in according him the privilege of going forward in no wise shifts to him the burden of proof as the law knows that phrase. In Behnke v. President of the Board of Trustees, 366 Ill. 516, 9 NE2d 232, it is stated:

"The phrase 'burden of proof' is a much abused term because it has been the tendency of courts and lawyers to use the phrase loosely to mean either (1) the need of establishing the existence of a fact or facts by evidence which preponderates to a legally determined degree; or (2) the task resting upon a party litigant, at any particular time during the trial, to create a prima facie case in his own favor or to destroy one when created by the opposing litigant. 'Burden of Proof' should be restricted to the first situation, and burden of going forward with evidence is a more exact expression to use in denominating the second situation."

Defendant argues that these 'before and after' occurrences should have been left in for consideration by the jury; "that where there could be more than one *cause* of the damage it is the plaintiff's burden to prove which one caused it"; "that where two *causes* could be the cause of the damage, plaintiff had the burden of proving which one caused it"; "That defendant has the right to elicit, upon cross-examination, other possible *causes,* and upon eliciting such evidence to have all the evidence as to such causes submitted to the jury." These would be correct statements of the law, were it not for the fact that the evidence elicited on this cross-examination does not establish

329

even remotely, a possible "cause" or "causes" of plaintiff's injuries. No jury could reasonably infer from these incidents that one or both of them were related to the injuries plaintiff sued on. In short, as to both, there was no nexus. To elevate testimony that sometime before the rear-end accident in question plaintiff had been bumped, bending a trunk handle, and that after the accident and before the onset of a more serious lower-back complaint, his front head-light was struck, to the status of contributing or intervening causes, suitable for submission to triers of the fact, is to misread standards of relevancy required as pre-conditions of admissibility. That this requirement devolves on the defendant to the same extent as on plaintiff initially in presenting his case, which it does, does not shift the burden of proof, or indeed have anything to do with it. It is a question of relevancy, pure and simple.

■ Relevancy describes evidence that has a legitimate tendency to prove or disprove a given proposition that is material as shown by pleadings. (See 1 Wigmore on Evidence, 3d Ed., Sec. 2.) That intervening and contributory causes are material to the issue of proximate cause is implicit in the very nature of things, and taken as a matter of course in actions of this kind. They are material propositions that may be proved. The question here is whether the evidentiary facts offered by defendant did prove either one or both of them. Relevancy has been defined as a tendency to establish a fact in controversy, or to render a proposition in issue more or less probable. To be probable, evidence must be viewed in the light of logic, experience and accepted assumptions concerning human behavior. We think on all these counts, viewing the evidence as a whole, reading text in context, that the cross-examination failed to produce evidence that had a tendency to establish any fact

330

which would render plaintiff's proof of proximate cause less probable.

■ Nor did the court's action invade the province of the jury, as defendant contends, by directing a verdict or by lending a greater credence to the testimony of the plaintiff and his medical witnesses. Matters improperly in evidence should be stricken. If some hardship may attach to that act, the one who induced such action has little grounds for complaint. And this possibility is exactly what occasioned the Court's insistence that the evidence suggested by the initial questions be "connected up." In each situation, examining counsel gave his assurance that it would be. When he failed to make such examination partake of the relevant he surely cannot complain. He was put on guard that such action would be taken if he failed. Such action was implicit in the query from the bench: "are you going to connect it up?" Failure at the very least would occasion an instruction to disregard. Surely in this context, when warned in advance, his present alarums cannot be seriously considered.

■ We do not mean to imply that the cross-examination was improper, or beyond the scope of direct. It was not. It was directed towards a material issue. The trouble is that while it started it never arrived. And when risk of damage to one party's case becomes apparent, from a line of questioning that up to then lacks the probability of tending to prove or disprove anything material, the court should obtain an assurance, if sought, that relevancy will be established. Granger v. Turley, 20 Ill. App. 2d 488, 156 NE 2d 610 (1959). If the assurance turns out to be an empty gesture, that which has been shown should be stricken to remove what lingering impact it may have. It is no answer to say, that in doing just that, possible attendant psychological harm may ensue to

331

the assurer's case. We doubt that it does, but if it does, he has no cause for complaint.

A perfect example involves the slip on the rug. Seemingly no prejudice would ensue, for the negative answer ended the inquiry. Notwithstanding, the "slip" remained, hanging in the courtroom air. To the untrained ear it might seem that this incident may have had something to do with plaintiff's injuries. At least plaintiff's counsel thought so, and thinking so, it was his right, indeed his duty, to move to strike. Relief was accorded in striking it and instructing the jury to disregard it. Defendant does not complain of this action, and we merely recite it for the purpose of showing that what started out as valid cross-examination ended up by injecting an irrelevant, improper, and possibly prejudicial fact into the case. As to this testimony, such is abundantly clear, and upon analysis, and to the same extent, and in like vein, is the testimony as to prior and subsequent accidents.

We next turn to defendant's contention that plaintiff's opening argument was prejudicial. While the argument was not novel in the sense that the trial bar would be less than astounded, it is novel so far as Appellate Courts in this State are concerned. We refer to what we shall call, the "per diem argument" for pain and suffering.

Defendant apparently sensed that this type of argument was about to be made and prior to its advent objected—"if that is his plan—." Counsel for plaintiff responded:

> "I don't make any secret about my plans as far as the closing argument is concerned to the Jury. . . . I do plan to use, and I believe I should be entitled to, not a blackboard, but a plain white sheet of paper which is completely blank, and mark it as an exhibit for identification so it can become a

part of the record in the case, for purely demonstrative purposes and for illustration and properly demonstrate the question of damages to the Jury. . . . Anything I write thereon, either figures or number, become a part of the record, but the use is purely for the purpose of demonstrating to the Jury and in aiding in interpreting the difficult questions and very complicated questions of damages in this case."

Defendant's request that the Court instruct plaintiff's counsel not to use a chart to write on and not to argue damages on an hourly, daily, weekly, monthly, or yearly basis, for pain and suffering was denied. It was understood, and indeed, stated by counsel that any chart used in the computation of pain and suffering, while marked as an exhibit, would not go to the jury, and would be used solely for demonstrative purposes, "as a skeleton model that we used in the case," and would be included in the record on appeal. It has been. We have inspected it and it looks like this:

14.7

| | | | |
|---|---|---|---|
| 1. | Nature and Extent | | $10,000.00 |
| | | $50,140.90 | |
| 2. | Pain and Suffering April 16, 1956 | | |
| | 11,680 hours | | 11,680.10 |
| | 510 days | | 5,100.00 |
| 3. | Future Pain | | 8,760.00 |
| 4. | Hospital and Medical $873.00 + $415.90 | | 1,288.90 |
| 5. | Lost Earnings | $ 2,432.00 | |
| | | 2,880.00 | 5,312.00 |
| | | | |
| 6. | Permanency | | 8,000.00 |
| 7. | Workability | | |

As promised, counsel commenced writing the figures shown above. We can best savor them in context with his argument, which began by breaking the two-year period of time immediately after the accident into hours, allowing and deducting eight hours per day for sleeping.

> "Now, this man was making around three dollars and twenty cents an hour on his job, is that right? That is three dollars and twenty cents an hour. Would I be reasonable if I suggested to you that you cut his rate of pay for suffering down to one dollar an hour and only give one dollar an hour or eleven thousand six hundred and eighty dollars for the suffering?"

Having dealt with this two-year period, counsel next calculated the remaining time up to the date of trial:

> "Now, let's put it into hours in the last two years. Let's confine it to a per diem type of situation. Is it logical to say that he is entitled to ten dollars a day up to today? That isn't one dollar an hour for suffering. It is less than one dollar an hour, and is that unreasonable? If we said that, that would be fifty-one hundred dollars, which would bring us up to today."

Future pain and suffering was handled thusly, based on a life expectancy of 24.52 years:

> ". . . that would be 8760 days and at $1.00 a day instead of $10.00 a day, figuring at 8760 days, you would have the figure for future pain. So we would give him eight thousand seven hundred and sixty dollars for future pain."

The argument closed in this vein:

> "But may we total these figures now for you, and this is what we are entitled to recover in this

334

case, these elements. And I suggest to you these are reasonable figures. If Counsel can show us a better way to compensate this man, let him show you. . . . We have suggested to you and tried to show to you that a logical verdict and a fair verdict in this case would be fifty thousand one hundred and forty dollars and ninety cents. And I ask counsel to go ahead and show to you something else, if he can show it."

Defendant's attack is on a broad front. First, he contends that there is no such thing as a mathematical formula to determine the amount of damage to be paid for pain and suffering. This is true. Tables for ascertaining the value of pain and suffering do not exist as facts susceptible of proof. But the fact of pain and suffering is recompensed in dollars. If this is so, it does thereby furnish a basis for an argument, qua argument, that pain and suffering have a monetary value. It is not evidence of course. It is argument. Argument is to be distinguished from the presentation of evidence. Argument is the piecing together of evidentiary facts in combination with the ordinary rules of logic and rhetoric. If pain and suffering were not recompensed in money then as a matter of logic the argument would be bad. But such is not the logic of the situation because such is not the law.

A plaintiff, in the first instance, in his complaint, pleads damages for pain and suffering in dollars. Since the law permits a prayer for a specific amount, it would follow then, in logic, that this figure could be argued. In Graham v. Mattoon City Railway Company, 234 Ill. 483, 84 N. E. 1070, 1073 (1908) it was so approved:

"'We say to you, gentlemen of the jury, and repeat it again, that the evidence shows a case of a man who, in sound health weighed 300 pounds . . . an active man, whom this com-

335

pany trusted and employed; that this man is permanently injured; that the sum of $10,000.00 which he asked you to give him in his declaration is what he should fairly have, gentlemen of the jury.' The objections made to these remarks is that they refer to the amount claimed in the declaration. We do not think that there is any valid objection to counsel, in argument, telling the jury what, under the evidence, counsel considers a fair compensation for the injuries received."

If the total amount can be argued, what logical objection is there to arguing its components? That such an argument may be thought by many to be more persuasive than arguing a gross amount is no reason, standing alone, to forbid its use.

True, no unit value can be assigned per hour or per day for pain and suffering. There is obviously no basis *in fact* for saying mathematically that because a man is employed at $3.20 an hour, he should be paid $1.00 per hour for pain and suffering. But because this 'fact' is not susceptible of proof, and on that everyone would agree, it does not mean that it cannot be argued, for the argument is then based, as all arguments must be, on the evidence—the evidence of pain and suffering plaintiff experienced, which must be compensated for in money.

██ Let us make our meaning more precise. Arguments must be based on the evidence. Facts in evidence may be pieced together to form such argument. The argument that results is not evidence. The facts here are that pain and suffering existed and that legally, hence logically, they are worth money. Certainly, if it is within the ambit of proper argument to take this fact, apply the law and argue for a given total, then the method of arriving at the total would, we think, be proper argument too. If the jury can

336

hear the whole, why not its parts? Total amounts necessarily are composed of lesser amounts. What is wrong in knowing what they are?

Defendant further contends that the argument places him in an "unjustifiable dilemma," that is, he is forced into arguing the issue of damages. This may be true, but it is not a dilemma, and if it is, then it is not unjustified. An argument in mitigation of damages can be successfully made without implying an admission of liability. Trial counsel have been doing it for years and we can see no reason why a per diem argument renders it less likely. Defendant, here, chose in large part to argue matters other than damages. But that was his choice. He apparently thought below that the negligence issue should be stressed in argument. He does not make it here. He implies now that because of this dilemma he could not have done so without admitting liability. But this is no more so than in any other case of this kind. We are certainly not going to arrogate ourselves to the judgment of trial counsel as to what a proper counter-argument might be, but we are convinced of this, it can and will be devised. We note in passing, too, that the verdict was less by half ($20,000.00) than the $50,140.90 shown on counsel's chart. Defendant objects to the argument but not the result.

A thoughtful discussion of the per diem argument is found in Ratner v. Arrington, 111 So.2d 82 (Fla. 1959), and the following reasons assigned in its favor:

"(1) That it is necessary that the jury be guided by some reasonable and practical consideration; (2) that a trier of the facts should not be required to determine the matter in the abstract, relegated to a blind guess; (3) that the very absence of a yardstick makes the contention that counsel's suggestion of amounts misleads the jury a questionable one; (4) the argument that the

337

evidence fails to provide a foundation for the per diem suggestion is unconvincing, because the jury must, by that or some other reasoning process, estimate and allow an amount appropriately tailored to the particular evidence in that case as to the pain and suffering or other such element or damages; (5) that a suggestion by the counsel that the evidence as to pain and suffering justified allowance of a certain amount, in total or by per diem figures, does no more than present one method of reasoning which the trier of the facts may employ to aid him in making a reasonable and sane estimate; (6) that such per diem arguments are not evidence and are used only as illustration and suggestion; (7) that the plain danger of such a suggestion being mistaken for evidence is an exaggeration, and such danger, if present, can be dispelled by the court's charge; and (8) that when counsel for one side has made such argument the opposing counsel is equally free to suggest his own amounts as inferred by him from the evidence relating to the condition for which the damages are sought." 111 So.2d at 89.

See also L. & N. R. R. Co. v. Mattingly (Ky. 1960) 339 S.W.2d 155.

We agree in particular with one of the reasons assigned in the Ratner case, that the very absence of a standard relative to pain and suffering, argues loudly for the rule giving counsel full latitude in exploring and discussing this element of damages. To deny the use of the per diem argument seems to us a curtailment of the right of argument since it precludes the use of a persuasive technique, and what is argument if it does not persuade. We admit that this later phrase could be carried to absurd lengths. All persuasive techniques are not countenanced, but persuasive

techniques that remain within and are a part of the traditional role of argument are proper and novelty is certainly no reason for nonacceptance.

Pain and suffering in the law of damages are probably unique in that they are non-certain and non-punitive. But unique or not they exist. Damages for hospitalization, property damage, and loss of work, to mention but a few are easily ascertainable; even exemplary and punitive awards can be approximated by a showing of the defendant's worth. In every law suit such as this, damages are compounded of the so-called "specials," and then to varying degrees, of those elements that defy monetary exactitude. Pain and suffering and future disability come immediately to mind. These have an elusiveness that defies immediate or even mediate reduction to dollar and cents. For that reason, the very lack of definitive criteria, no monetary admeasurement in terms of evidence is admissible. There are no experts in this field, no books, no charts, no tables that are authoritative. True, courts can tell when too much is too much or too little is too little. But within the bounds of too little and too much there is an area where discretion is at large, and this is a reason in itself, at least to the extent we have indicated here, that argument should have full sway.

To what end should we now enunciate a circumscription? Surely it is artificial restriction if we are to say to plaintiffs: "You can argue the gross figure but that is all!" Such a dictate does not commend itself. Why not discuss the parts that make up the whole? We do not say that an advocate must or even should, but if in his judgment he deems such of greater persuasiveness, we can see no reason not to accord him that right. It is, after all, argument, not evidence. There is an approved cautionary instruction to that effect. Jurors certainly know, even absent this instruc-

tion, that counsel in the case are not witnesses nor parties. They expect an argument. They are entitled to it. No one is seriously going to argue at this late date that they view lawyers' arguments as evidence.

■ We summarize briefly our reasons for holding the per diem argument acceptable: In the first place, such an argument can suggest valid considerations for rendering the abstraction of pain and suffering comprehensible for concrete translation into dollars; Secondly, the argument is logically suggested by the evidence when read in context with the monetary determination that must be made; Thirdly, this line of argument falls within hitherto accepted bounds of advocacy and it is not apparent to us where it now o'er leaps them.

■ We think it follows that if the per diem argument is proper, then a chart may be used to follow the arithmetic. The use of demonstrative evidence, and in particular a blackboard, has been heretofore approved. People v. Fisher, 340 Ill. 216, 172 N.E. 743 (1930). Again, as with the per diem argument itself, defendant attacks its use on matters of auxiliary policy, that is, that the chart might be misconstrued as evidence. But the chart does not go to the jury room, it is not offered in evidence, it is but an adjunct of argument and we fail to see how it could be otherwise interpreted. We are rather of the opinion that a chart, as used here, is of great assistance. Problems in addition, subtraction and multiplication almost by definition are better delineated on paper. To be meaningful, they should be seen and heard, not just heard. To add, subtract and multiply without paper seems to us a waste of words. We therefore approve the use of the chart, particularly when it lends itself for easy incorporation in the record on appeal.

■ ■ Defendant also asserts that plaintiff was guilty of prejudicial misconduct in his closing argu-

340

ment. During the course of the trial it developed that defendant had hired a professional camera man, who, unobserved, took four minutes of motion pictures during a four hour period while plaintiff was at work. Plaintiff said that this was "sneaking around." We view the characterization as mild, under the circumstances, and certainly not error. Nor do we believe the statement by plaintiff's counsel that a certain witness was called "in here to testify for the defense and to fabricate a story," was prejudicial error, though it was uncalled for. Inconsistencies were developed in the testimony of defense witnesses and plaintiff's counsel did not dwell further on it after objection. Defendant also objects to certain given instructions of plaintiff. We have examined them, they were properly given, and the allegation of error is without merit. The judgment appealed from is affirmed.

Affirmed.

McNEAL, J., concurs.

DOVE, J., dissenting.

The record in this case discloses that at the conclusion of all the evidence counsel for the plaintiff, at a time when the jury was not present, stated to the court and to opposite counsel that in his argument to the jury he planned to place a plain blank white piece of paper on an easel, that he would write thereon with indelible ink the elements of damage which the court would instruct upon and he planned to argue therefrom for the purposes of illustration and to properly demonstrate to the jury and aid the jury in interpreting the difficult and very complicated question of damages in this case. Counsel for defendant objected to any such demonstration. The court indicated that counsel for plaintiff had such a right

and a blank, heavy, white sheet of paper 28½ inches by 22½ inches was fastened to an easel by adhesive tape and placed before the jury during a portion of counsel's argument.

During the opening argument counsel for the plaintiff stated that the task of the jury was to compensate the plaintiff fairly, justly and adequately; that the court would give the jury instructions as to the elements of damage which the jury were to consider; that the first element to be taken into consideration was the nature and extent of plaintiff's injury and then counsel continued: "What can we say about Charles Kaley's condition in comparison to that of a normal human being. Is there any question that this is serious injury, that this is a disabling injury? Is there any question that this man suffered a ruptured intervertebral disc, a whiplash injury, a fractured rib and the loss of 17 teeth? Is it worth approximately $10,000.00?" Counsel for defendant objected, stating that there was no evidence of any value and that the argument was improper and prejudicial. The objection was overruled and at this time, as I understand the record, counsel wrote or printed in large letters and figures at the top of said paper the following: "(1) NATURE & EXTENT—$10,000.00." After so doing counsel then proceeded: "Can we reach an item of money as to the cost of pain and suffering? What is pain and suffering? Can a man say that his neck hurts but the next man say he feels well? Can a man say his back hurts and pain is radiating into his leg, but the next man feels well? Is there a way of evaluating and fixing its worth? Can you put a value upon pain? Life puts a value upon pain. Drugs and anesthetics are administered for operations; people take novocain if a tooth is going to be pulled. A valuation is placed upon it, but it is difficult. Pain varies. Pain is not an all-inclusive term. Pain can be

severe pain, can be excruciating pain, can be an aching pain, can be a radiating pain. It varies. What is pain worth? If we take from the time of the date of this occurrence up to the time that he has been back to work, that is, take from the 16th day of April, the date of this occurrence, in 1956, up to two years ago, which would be April, 1958, up to about the time he went back to work and got out of the hospital and got through with Dr. Woodhouse's treatment, that is about a two year period. In that two year period there were three hundred sixty-five days to each of those years or seven hundred and thirty days. Say of those seven hundred thirty days the same person would normally sleep eight hours of each of those seven hundred thirty days. Let's take sixteen hours of each day for these seven hundred thirty days and you will see that you come up with a figure of eleven thousand six hundred and eighty hours. That is two years of suffering. We usually don't figure it that way, but it is eleven thousand six hundred and eighty hours of suffering. Now, this man was making around three dollars and twenty cents an hour on his job, is that right? That is three dollars and twenty cents an hour. Would I be reasonable if I suggested to you that you cut his rate of pay for suffering down to one dollar an hour and only give him one dollar an hour or eleven thousand six hundred eighty dollars for the suffering?"

Counsel then wrote upon said paper just beneath what he had written, the following:

"(2) PAIN & SUFFERING
 April 16 56
 11,680 hrs 11,680.00"

Counsel for defendant again objected to the demonstration by counsel for plaintiff, stating that no witness would be competent to so testify; that the

■■■■■■■

argument was not based upon any evidence but was purely conjecture on the part of counsel and improper. The objection was overruled and counsel continued: "That brings us up to two years ago, from April, 1958, up to today, which is seventeen months. Now seventeen months would be sixty-eight weeks if my mathematics are correct. Sixty-eight weeks would be approximately five hundred and ten days. That is five hundred ten days more he has suffered. Now, let's not put it down into hours in the last two years. Let's confine it to a per diem type of situation. Is it logical to say that he is entitled to ten dollars a day up to today? That isn't one dollar an hour for suffering. It is less than one dollar an hour, and is that unreasonable? If we said that, that would be fifty-one hundred dollars, which would bring us up to today." Thereupon counsel wrote: "510 days—5100.00" and continued: "Now, that leaves us with only two items—one item and two items. Now the court will instruct you there are three items. The third item must be from today on, and that is the future pain and suffering. What did Dr. Addison say about the situation? Did he say it was permanent? Yes, he did. Did Dr. Woodhouse say this was permanent? Yes he did. And does such a situation cause pain? Yes. Is there any doubt that this man will suffer pain in the future if he is not well and he is permanently injured? This is from this day on. But this man doesn't come back to trial a year from now nor five years from now; he is in court today. It is you, the jury, and no other jury the court can bring in who can compensate him for his injuries from this day on. Now, in the future, we have showed you that this man, according to all reasonable expectations, what they call a table of mortality, is going to live approximately 24.52 years. Of course, I know some people might die tomorrow or might live for another

fifty years, but we have to have something to go by. Again we have to go back to the probability, just like a doctor goes back to probability and as we in life go back to probability that that will occur. Then, according to the statistics, this man will live 24.52 years. If counsel can show us a better way to figure out this problem, I hope he does. You take 24.52 years with 365 days in each one of those years and take $1.00 a day for the rest of his life, with 24.52 years at 365 days a year and multiply that, that would be 8760 days and at $1.00 a day instead of $10.00 a day, figuring at 8760 days, you would have the figures for future pain. So we would give him eight thousand seven hundred and sixty dollars for future pain." Upon the paper so fixed to the easel and placed in front of the jury counsel then wrote: "(3) FUTURE PAIN—8760."

The attention of the jury was then called to the evidence relating to physicians and hospital bills and counsel wrote:

 "(4) HOSPITAL & MEDICAL
 $873 + 415.90—$1288.90"

The fifth item of damage referred to by counsel was indicated on the chart as:

 "(5) LOST EARNINGS—$2432
 2880—$5312.00"

Counsel's argument then continued: "The next element is the element of permanency. We have talked about the future pain, but we have not talked about the fact this is a permanent injury. What it means to this man to go through life and anticipate the difficulty that he might probably have, and what it means to this man to take a step when he doesn't know whether he can take a step, what it means to

this man to not be able to turn his head as we are able to turn our heads, and for this man to have to go through life anticipating and knowing what type of condition he has. Now, what would you say the permanency here is worth? Can you put a value upon the permanency? The permanency is a completely different item and a different element and it is an element he is entitled to recover for. May I suggest to you the permanency in this case is worth approximately eight thousand dollars." Indicating this item, the following appears on the chart, viz.: "(6) PERMA-NENCY—8000.00" Underneath the word, "PERMA-NENCY," on the chart, appears this item: "(7) WORKABILITY ———" and in this connection counsel in his argument said: "Now there is one other item that the court will instruct you about also. He is entitled to be compensated for the fact that he cannot do his job in the manner in which he was able to do it before this occurrence took place. . . . The question is a question of working in the same way on this job today that he could work on his job before this occurrence took place. He is entitled to be compensated for that now and for the future, but I'm going to leave it just at that figure, and leave that at the blank figure of his work life expectancy. His work life expectancy was 14.7 years. This is what they say in all probability this man should be able to earn. Will he be able to work the 14.7 years. Do you think he will be able to work that period, but let's leave that completely blank." The chart shows the figures "14.7" at the top, but nothing in connection therewith.

Counsel then concluded: "But may we total these figures now for you, and this is what we are entitled to recover in this case, these elements. And I suggest to you that these are reasonable figures. If coun-

sel can show us a better way to compensate this man, let him show you. But let me add these figures and you will see that they total $50,140.90. . . . We have suggested to you and tried to show you that a logical verdict and a fair verdict in this case would be about $50,140.90. . . . This is our case, ladies and gentlemen. They came in here before you, and our evidence is unrefuted and uncontradicted. Don't you think if it could have been refuted or contradicted that they would have done so?"

The several items appearing on the chart aggregate $50,140.90 and in bold figures near the center of the chart and close to the top and beneath the word "EXTENT" which appears in the first item, counsel wrote this amount.

The record presents for the first time to a reviewing court in Illinois the propriety of permitting counsel for a plaintiff in a personal injury action, to present in connection with his argument, a chart or blackboard upon which he writes the elements which compose the damages he claims his client has sustained and upon this chart, counsel, during the course of his argument lists items for past and future pain and uses in connection therewith a mathematical formula and computes these items on an hourly or per diem basis and places the result of his computation upon the chart in the presence of the jury.

The majority opinion states that pain, suffering and future disability have an elusiveness that defies immediate or mediate reduction to dollars and cents and advances three reasons for holding this per diem argument acceptable. First, that such an argument suggests to the jury valid considerations for rendering the abstraction of pain and suffering comprehensible; second, that such argument is logically suggested by the evidence when read in context with the monetary

347

determination that the jury must make; and, third, that such an argument falls within the accepted bounds of advocacy.

The per diem argument does suggest a comprehensible compensation plan to be allowed an injured plaintiff but such per diem argument is neither suggested by any evidence found in the record nor does such an argument fall within the accepted bounds of advocacy. Before an argument can ever be characterized as acceptable it must be based on the evidence or inferences that may be reasonably drawn therefrom. This argument has no basis in the evidence or in any inference drawn therefrom.

Pain and suffering, of course, are elements of damage for which plaintiff, in an action for personal injuries, is entitled to be compensated. These elements of damage have no market price. They are not capable of being exactly and accurately determined and there is no fixed rule or standard whereby damages for them can be measured. The award must be limited to compensation but compensation in this connection is not to be understood as meaning price or value, but as describing an allowance looking toward recompense for, or made because of, the suffering consequent upon injury. The question is not what sum of money would be sufficient to induce a person to undergo voluntarily the pain and suffering for which recovery is sought or what it would cost to hire someone to undergo such suffering, but what, under all the circumstances, should be allowed the plaintiff in addition to the other items of damage to which he is entitled, in reasonable consideration of the suffering necessarily endured. The amount allowed must be fair and reasonable, free from sentimental or fanciful standards and based upon the facts disclosed by the evidence. (15 Am. Jur. Damages, sec. 73, pp. 481–2–3).

Future pain and suffering also constitute a proper element of the damages which may be allowed an in-

jured plaintiff but there must be the requisite probability that such pain and suffering will result and damages for future pain and suffering must have a basis in the evidence and pain and suffering which are merely possible and speculative or conjectural are not to be considered. (15 Am. Jur. Damages, sec. 73, pp. 483-4)

Every juror is acquainted with pain and suffering and compensation for these elements of damage must rest in the discretion of the jury, guided by common sense. And it is proper to instruct the jury in cases of this character that it is their province to determine the damages plaintiff should recover; that in so doing they should fix an amount of money which will reasonably and fairly compensate the plaintiff for the elements of damage proven by the evidence including pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries the plaintiff sustained; that in determining the amount of plaintiff's damages the jury should take into consideration the nature, extent and duration of his injuries and their verdict must be based on evidence and not upon speculation, guess or conjecture. (I.P.I. 30.01, 30.02, 30.04, 30.05).

In the instant case counsel told the jury that the plaintiff was earning $3.20 per hour at the time he was injured and suggested that the jury cut his rate of pay down to one dollar an hour and only give him $11,680.00 for suffering during the two year period immediately following the accident and give him an additional sum of $5100.00 for the 510 days immediately preceding the trial. Plaintiff's life expectancy was then referred to by counsel and the jury was called upon to give the plaintiff an additional $8760.00 for future pain at the rate of $1.00 per day. The only evidence upon which this argument was based is that plaintiff was earning $3.20 per hour prior to the time of his injury and his life expectancy was 24.52 years.

As the majority opinion points out there is no basis for saying mathematically that because a man is employed at $3.20 an hour, he should be paid $1.00 per hour for pain and suffering.

The majority opinion cites the case of Ratner vs. Arrington Fla. 111 So. 2d 82 and states that thoughtful discussion of the per diem argument is found in that case and sets out eight reasons which the Third District Court of Appeal of Florida said the authorities of other jurisdictions had assigned for approving the per diem argument for damage determination for pain and suffering. The opinion in the Ratner case then went on to say that all of the items or elements of damages listed on the chart in that case and argued to the jury were supported by some evidence of calculable monetary value except the elements of "pain and suffering" and "physical disability and inability to lead a normal life". The court then said: "As to those two elements we are not prepared to hold that it was prejudicial error for the trial court to allow counsel for appellee, in argument to the jury, to suggest an amount which he felt would be proper and reasonable to be awarded as damages therefor. Nor do we hold it was error to include a suggested per diem approach to such an award".

"True" continued the court in the Ratner case, "the latter point is one which presently is giving courts much concern, recent holdings, for and against the allowance of such arguments, are not grounded on reasons of sufficient force to compel the decision either way. The ultimate course of judicial opinion on the point is not yet discernible. Therefore in approving the practice now we do not purport to foreclose the question. We do, however, now hold that the trial judge did not abuse his discretion in overruling appellants' objections to the use of the chart and the argument of appellee's counsel based on the chart".

350

Since the Ratner case was decided the Supreme Court of Wisconsin has had occasion to consider this question. In Affett vs. Milwaukee and Suburban Transport Corp., 106 N.W. 2d 274, the plaintiff sought to recover for injuries alleged to have been sustained by her when a door of defendant's bus closed upon her arm while she was attempting to enter the bus. During the closing arguments to the jury plaintiff's counsel used a blackboard to display and suggest to the jury a mathematical formula for the computation of damages. Upon the blackboard plaintiff's damages were set forth and after the word pain appeared the figures $1.50 and $10,950.00. The opinion states that counsel multiplied $1.50 per day by 365 days and then multiplied that sum by twenty which was plaintiff's life expectancy whereby counsel arrived at the total of $10,950.00.

In the Affett case the court stated that the propriety of permitting counsel for the plaintiff to present to the jury a mathematical formula setting forth on a per diem basis the amount determined by the plaintiff as damages for pain and suffering had not been determined by that court and that there was a sharp difference of opinion among the courts, the procedure having been approved in some jurisdictions and disapproved in others. The court called attention to numerous articles in legal literature and cited numerous cases from other states.

In the course of its opinion which reversed the judgment of the trial court in favor of the plaintiff the court said that the arguments of courts of the other jurisdictions pro and con, were summarized in Ratner vs. Arrington, Fla. 111 So. 2d 82, supra, and after quoting from that case said (p. 279):

> "We believe that the arguments advanced disapproving the use of a mathematical formula are more persuasive. The use of a mathematical for-

351

mula is pure speculation by counsel, which is not supported by the evidence and presents matters which do not appear in the record. The formula may be used to arrive at a gross figure by taking an arbitrary amount of money per day and multiplying it by the number of days in a year, times the number of years of the life expectancy of the plaintiff. Logically, if this method were followed, the gross amount arrived at should be discounted to its present worth. Seldom is pain constant for the entire life expectancy of the plaintiff, and if the evidence showed that it would be, the intensity of pain normally varies. It is true that the formula can be tailored to fit the evidence in cases where pain is sporadic or intermittent by taking into account only the number of days which the evidence shows future pain might be suffered. This use of the formula is still subject to the basic criticism that the formula must always include an arbitrary dollar amount per day or other period of time, which has no foundation in the record. It is argued that the per diem amount of money is relatively so small that it is obviously reasonable. Such an argument begs the question. The fact is that such amount or valuation is not in the evidence and indeed could not be. The formula is sometimes used to illustrate or to prove the reasonableness of a certain amount of money. The formula is then used in reverse to show that the lump sum is not unreasonable because it represents only a few dollars per month or per day. Generally in determining the lump sum, the formula is applied as in the first method. Segmentation of a lump sum to show its reasonableness because the per diem amount is small is subject to the same criticism as the other method of use. There is no mathematical way of

formulating a formula which will represent all the varying factors involved in pain and suffering in a given case without making assumptions of fact which are not in the evidence. The formula, rather than being an aid as claimed, would result in confusing the jury. The basic reasoning behind the use of any mathematical formula is not so much to aid, or even to persuade, the jury as it is to ultimately establish a fixed standard to displace the jury's concept of what is a fair and reasonable amount to compensate for the pain and suffering sustained as shown by the evidence in the light of the common knowledge and experience possessed by the jury of the nature of pain and suffering and the value of money. The difficulty in using a mathematical formula to measure damages for pain and suffering is inherent in the nature of pain and suffering. It cannot be measured by any such mathematical standard. Pain and suffering has no market price. It is not bought, sold or bartered. It has no equivalent in a commercial sense. We cannot agree with the reasoning in the Ratner case, supra, that the absence of a fixed rule for the measurement of pain and suffering supplies a reason for the use of a mathematical formula. The present rule for measuring damage is as fixed as the nature of the subject matter will permit. True, counsel should be entitled to a reasonable latitude in argument and in commenting on the evidence, its nature and effect and may make proper inferences which may reasonably arise from the evidence. However, we fail to see where a mathematical formula or a pain-on-a-per-diem or per month basis has its basis in the evidence, or in the logical inferences from the evidence. Such arguments are beyond the scope of proper argumen-

353

tation. The absurdity of a mathematical formula is demonstrated by applying it to its logical conclusion. If a day may be used as a unit of time in measuring pain and suffering, there is no logical reason why an hour or a minute or a second could not be used, or perhaps even a heart beat since we live from heart beat to heart beat. If one cent were used for each second of pain, this would amount to $3.60 per hour, to $86.40 per twenty-four-hour day, and to $31,536 per year. The absurdity of such a result must be apparent, yet a penny a second for pain and suffering might not sound unreasonable. The principle is the same, whether one uses a second, an hour, or a day as the basic unit of time, because to the unit of time used one must assign some money value which has no foundation in the evidence. We see no difference in using the mathematical formula for illustrative purposes and using it to determine the reasonableness of the amount sought as damages. The use of the formula was prejudicial error. We find no objection to the use of a blackboard as an aid to illustrate or demonstrate in the course of proper argumentation. What the ear may hear, the eye may see. . . . Counsel for both the plaintiff and the defendant may make an argumentative suggestion in summation from the evidence of a lump sum dollar amount for pain and suffering which they believe the evidence will fairly and reasonably support. Counsel may not argue such amount was arrived at or explained by a mathematical formula or on a per-day, per-month, or on any other time segment basis".

Botta vs. Brunner, 26 N.J. 82, 138 A. 2d 713, 60 A.L.R. 2d 1331 is perhaps the leading case which dis-

approves of the use of the so-called per diem mathematical basis for fixing damages for pain and suffering. The plaintiff in that case was a passenger in an automobile driven by the defendant Brunner, when it collided with a car operated by co-defendant Leo Frieband. The plaintiff recovered a judgment which the Superior Court, Appellate Division, upon an appeal by the plaintiff, reversed and remanded the cause for a new trial as to damages only. In order, to deal with the right of plaintiff's counsel in personal injury damage suits to suggest monetary mathematical formulas to a jury for the computation of compensation for pain and suffering, the Supreme Court of New Jersey granted certification.

In the course of its opinion the court (omitting citations) said:

> "For hundreds of years the measure of damages for pain and suffering following in the wake of a personal injury has been 'fair and reasonable compensation'. This general standard was adopted because of universal acknowledgment that a more specific or definitive one is impossible. There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for personal injuries. And it is equally plain that there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. A person can sell quantities of his blood, but there is no mart where the price of a voluntary subjection of oneself to pain and suffering is or can be fixed. It has never been suggested that a standard of value can be found and applied. The varieties and degrees

355

of pain are almost infinite. Individuals differ greatly in susceptibility to pain and in capacity to withstand it. And the impossibility of recognizing or of insolating fixed levels or plateaus of suffering must be conceded.

"It is just as futile to undertake to attach a price tag to each level or plateau which could be said to have a reasonable basis in scientific or economic fact. Any effort to do so must become lost in emotion, fancy and speculation. (citations) As a consequence, the law has declared the standard for measuring damages for personal injuries to be reasonable compensation and has entrusted the administration of this criterion to the impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence. (citations) This does not mean that jurors are free to fix what they would want as compensation if they had sustained the injuries or what the pain and suffering would be worth to them. The so-called 'golden rule' may not be applied to such damages. (citations) Obviously, the quoted portion of plaintiff's summation here runs counter to this principle. However, we prefer to base our disposition of the appeal on a more extensive treatment of the problem. But since the nature of the subject matter admits only of the broad concept of reasonable compensation, may counsel for the plaintiff or the defendant state to the jury, in opening or closing, his belief as to the pecuniary value or price of pain and suffering per hour or day or week, and ask that such figure be used as part of a mathematical formula for calculating the damages to be awarded? Without expressing a personal opinion, may he

suggest that the valuation be based on so much per hour or day or week, or ask the jurors if they do not think the pain and suffering are fairly worth so much per hour or day or week . . . and then demonstrate, by employing such rate as a factor in his computation, that a verdict of a fixed amount of money would be warranted or could be justified?

"Some jurisdictions", continued the court, "have sanctioned such practice. (citations) Others, which we shall advert to, have condemned it. The precise question has not been passed upon by this court until now. Accordingly, we are free to adopt the rule which in our judgment best serves the cause of justice and its fair and orderly administration. As has been indicated, pain and suffering have no known dimensions, mathematical or financial. There is no exact correspondence between money and physical or mental injury or suffering, and the various factors involved are not capable of proof on dollars and cents. For this reason, the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation". (citations)

In Certified T.V. and Appliance Co. vs. Harrington, 201 Va. 109, 109 S.E. 126, the jury returned a verdict for the plaintiff for $12,500.00 to compensate her for injuries sustained when a shelf displaying television sets in defendant's place of business collapsed and fell upon her. Counsel for plaintiff in his argument used a blackboard upon which he listed items of special damages as well as suggested amounts for future pain and suffering and for future damages. The court reversed the judgment and held that this was improper argument and procedure. In the course of its opinion the court said:

357

"To permit plaintiff's counsel to suggest and argue to the jury an amount to be allowed for pain and suffering, mental anguish and disability calculated on a daily or other fixed basis, allows him to invade the province of the jury and to get before it what does not appear in the evidence. Since an expert witness would not be permitted to testify as to the market value of pain and suffering, which differs in individuals, and the degree thereof may vary from day to day, certainly there is all the more reason for counsel not to do so. The estimates of counsel may tend to instill in the minds of the jurors impressions not founded on the evidence. Verdicts should be based on deductions drawn by the jury from the evidence presented and not the mere adoption of calculations submitted by counsel. We are of the opinion that the use by plaintiff's counsel of a mathematical formula setting forth on a blackboard the claim of pain, suffering, mental anguish and the percentage of disability suggested by him on a per diem or other fixed basis, was speculation of counsel unsupported by evidence, amounting to his giving testimony in his summation argument, and that it was improper and constituted error". (citations).

Following the report of the Brunner case in 60 A.L.R. 2d 1331 will be found an interesting annotation dealing with this problem of fixing damages for pain and suffering on a per diem basis. Cases from Minnesota, Florida, Mississippi, Texas and other jurisdictions are referred to and commented upon. No good purpose would be served by citing or quoting from any more cases in connection with this matter but for one interested it would be entertaining to consult some of the recent volumes of NACCA Law

Journal which is published by the National Association of Claimant's Compensation Attorneys. In commenting upon the Botta case the assistant editor of this publication stated that the New Jersey court did its best to leave the jury shrouded in ignorance by banning such per diem measurement of damages for pain and suffering. "Such a rule", stated the commentator "denies the jury the guidance it so urgently needs and is a strait jacket on the proper role of the advocate". Continuing he says: "Botta is a dangerous opinion which went far beyond the issues raised and argued and the authorities cited. It inevitably invites the blind guess and figure pulled from the air (12 Rutgers L.J. 522). In the words of an eminent trial lawyer, 'The opinion is the most dangerous abridgment of the prerogative of counsel since Erskine defied the King of England' ". (24 NACCA LAW JOURNAL 252, 253). For a contrary view see 4 Defense Law Journal where the editor characterizes the Botta opinion as "a masterpiece of sound thinking and judicial writing". And for fascinating and informative reading the address of Mr. Melvin Belli before the Mississippi State Bar Association on "The use of Demonstrative Evidence in Achieving the More Adequate Award", is suggested. (Belli, Modern Trials, p. 1632). This address is referred to by Mr. Justice Francis in his opinion in the Botta case.

The efficiency, persuasiveness and effectiveness of the demonstration and argument approved by the majority opinion is best illustrated in the case of Braddock vs. Seaboard Air Line R. Co., Fla. 80 So. 2d 662. There was a second appeal in that case which is reported in 96 So. 2d 127. In order that counsel for plaintiffs in future personal injury cases in Illinois may secure *adequate* verdicts for their clients, the chart used in the Braddock case is here reproduced:

" 'Mike' Braddock

| | | Expectancy |
|---|---|---|
| "Age 9 | | 56 years |
| *Pain and Suffering to date* | 395 days | |
| Experience of accident | | $5,000.00 |
| Hospital 3/24—4/5/52 | | 1,200.00 |
| First 30 days at home | | 300.00 |
| to date 353 days | | 700.00 |
| *Inability to Lead Normal Life* | | |
| 3/24—5/31/52 crutches | | 340.00 |
| 6/1—10/31/52 pylon | | 459.00 |
| 11/1/52 to date artificial limb | | 348.00 |
| *Humiliation and Embarrassment* | | 1,915.00 |
| | | 10,262.00 |
| *20,440 days* | | *Future 56 yrs.* |
| *Medical* | | |
| Checkup by doctor once a year | | 440.00 |
| Artificial legs | | 3,600.00 |
| Repairs and Maintenance | | 2,640.00 |
| Stump socks | | 985.00 |
| Extra pants, shoes and socks | | 4,400.00 |
| Limb adjustment every 2 weeks | | 2,912.00 |
| | | 14,977.00 |
| *Pain and Suffering 20,440 days* | | 20,440.00 |
| *Humiliation and Embarrassment 20,440 days* | | 40,880.00 |
| *Inability to Lead a Normal Life 20,440 days* | | 40,880.00 |
| *Loss of Earning Capacity* 5500 x 50% x 56 | | 121,000.00 |
| | Total | $ 248,439.00" |

360

In the Braddock case the jury returned a verdict for the plaintiff for $248,439.00 which coincided exactly with the aggregate of the plaintiff's demands as set out on the chart. The opinion of the Third District Court of Appeal in the Ratner case states that on the second appeal in the Braddock case, 96 So. 2d 127, 129 the Supreme Court of Florida implicitly endorsed the use of the per diem argument by affirming the Braddock case without opinion and that it was the dissenting opinion in that case which set out the chart used.

I agree with the reasoning of some Federal courts and of the State Courts of Delaware, New Jersey, Missouri, Virginia, Wisconsin and other jurisdictions which hold that the determination of damages for pain and suffering is not susceptible of arithmetical calculation. And I agree with their conclusions that counsel's suggestion to the jury of a specified amount per hour, per day or any other period of time for such elements of damage is an unwarranted invasion of the province of the jury, has no basis in the evidence, is purely speculative and conjectural and calculated to secure from a jury a verdict much larger than that warranted by the evidence. In my opinion the adoption, by the courts of Illinois, of this rule will best serve the cause of justice and promote its fair and orderly administration.

The proper scope of jury argument does not include the use of a mathematical formula to measure pain and suffering such as the record shows counsel for the plaintiff used in this case. Permitting such argument, suggestions and demonstrations, over the objection of defendant, should require a reversal of the instant judgment.